450 P.2d 431 (1969)
79 N.M. 793
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, the Chicago Rock Island and Pacific Railway Company, the Colorado and Southern Railway Company, the Denver and Rio Grande Railway Company, and Trans-New Mexico Railway Company, Appellants,
v.
STATE CORPORATION COMMISSION of the State of New Mexico, Appellee.
No. 8631.
Supreme Court of New Mexico.
February 10, 1969.
Bryan G. Johnson, J.J. Monroe, Albuquerque, Harvey Huston, Chicago, Ill., for appellants.
Boston E. Witt, Atty. Gen., Myles E. Flint, David R. Sierra, Asst. Attys. Gen., Santa Fe, for appellee.

OPINION
MOISE, Justice.
By order issued July 31, 1967 in Ex parte No. 256, Increased Freight Rates, 1967, the Interstate Commerce Commission authorized increased interstate freight rates, effective August 18, 1967. On August 21, 1967, the petitioners, being the railroads operating in the State of New Mexico, filed with the State Corporation Commission their application for authority to make effective corresponding increases in rates applicable to New Mexico intrastate traffic. On September 1, 1967, by order No. 2838 in Docket No. 474, the Commission ordered that an investigation be instituted into and concerning the lawfulness of the rates, charges and regulations proposed by the applicants and, in addition that investigation be made into the lawfulness of all present rates and charges applicable to New Mexico intrastate traffic and, specifically, to the question of whether any violations of the constitution or laws of New Mexico result from the maintenance of three separate and different *432 class rates and conflicting publication of commodity rates.
After a full hearing at which evidence was presented by the applicants and the Commission, order No. 2849 was filed January 24, 1968. By the terms of this order the application seeking an increase in intrastate rates was granted, contingent upon the elimination of the differential between class rates for traffic in the eastern part of the state (being east of the line of the Santa Fe Railway between Raton and El Paso) as compared with the western part, and between the eastern and western parts of the state; and the application of the "eastern" rate to the entire state. The order was made effective April 1, 1968.
On March 12, 1968, the instant removal proceeding was docketed in this court at the instance of the State Corporation Commission, pursuant to Art. XI, § 7, N.M. Const., wherein it is stated:
"* * * in case of failure or refusal of any person, company or corporation to comply with any order within the time limit therein, unless an order of removal shall have been taken from such order by the company or corporation to the Supreme Court of this state, it shall immediately become the duty of the commission to remove such order, with the evidence adduced upon the hearing, with the documents in the case to the Supreme Court of this state. * * *"
On March 15, 1968, the applicants before the State Corporation Commission, being dissatisfied with the decision as contained in order No. 2849, filed a petition with the Interstate Commerce Commission, seeking an investigation looking to the increasing of New Mexico intrastate freight rates to the extent previously sought by the application in Corporation Commission Docket No. 474. This action was taken pursuant to §§ 13(3) and 13(4) of the Interstate Commerce Act (49 U.S.C.A., §§ 13 [3] and 13 [4]). The petition was assigned Docket No. 34962, and on May 27, 1968, the Interstate Commerce Commission ordered that an investigation as requested be instituted. This investigation is still pending.
The railroads first contend that by virtue of the investigation granted by the Interstate Commerce Commission, the questions here presented are moot, and accordingly should not be considered by us. The State Corporation Commission does not question the jurisdiction of the Interstate Commerce Commission to investigate intrastate rates. Neither does it contend that the Interstate Commerce Commission may not nullify rates that have been fixed, after full hearing and findings, as required by § 13(4) of the Interstate Commerce Act (49 U.S.C.A. § 13 [4]) as held in North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760 (1945). However, it does not agree that the questions are made moot thereby.
While we agree that it is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded, City of Birmingham v. Southern Bell Telephone & Telegraph Co., 234 Ala. 526, 176 So. 301 (1937), it is nevertheless equally true that so long as the order appealed from has any vitality and may be given implementation, even temporarily, the case is not moot and is entitled to consideration. Compare Massengill v. City of Clovis, 33 N.M. 394, 268 P. 786 (1928); Roswell Nursery Co. v. Mielenz, 18 N.M. 417, 137 P. 579 (1913); Costilla Land & Development Company v. Allen, 17 N.M. 343, 128 P. 79 (1912); and Pacific Greyhound Lines v. Brooks, 70 Ariz. 339, 220 P.2d 477 (1950).
The facts in this case are quite like those in State ex rel. Utilities Commission v. State, 243 N.C. 12, 89 S.E.2d 727 (1955), except that before the decision was reached in the Supreme Court in that case, the Interstate Commerce Commission had acted to increase intrastate rates so as to place them on a parity with interstate rates, and an effort to enjoin the commission order had proved unsuccessful. *433 State of North Carolina v. United States (D.C. 1955), 128 F. Supp. 718, aff'd by per curiam opinion of United States Supreme Court, 350 U.S. 805, 76 S.Ct. 45, 100 L.Ed. 723 (1955).
The North Carolina Supreme Court stated, at p. 731 of 89 S.E.2d:
"* * * In fact the question here posed would not be moot except for the fact that during the period the Commission order was in force the railroads collected approximately one million dollars in freightage."
We are in accord that if the Interstate Commerce Commission had acted either to supersede or otherwise alter the rates as determined by the State Corporation Commission, nothing would remain for us to consider and, absent some other problem such as was present in the North Carolina case, this removal would be moot. However, such are not the facts in the case here being considered. Order No. 2849 has been removed to this court as provided in Art. XI, § 7, N.M.Const., and this court is there granted the power and has the duty imposed to decide the case on its merits and carry into effect any judgment, order or decree entered by us. The taking of jurisdiction by the Interstate Commerce Commission in no way interferes with our jurisdiction to consider this removal proceeding. See North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760 (1945). While we fully recognize that our decision may ultimately come to naught, the fact remains that in the present posture of the case we have a duty to consider the order herein sought to be enforced.
Neither are we inclined to postpone consideration pending the Interstate Commerce Commission ruling. Its decision turns on the requirements of § 13(4) of the Interstate Commerce Act (49 U.S.C.A. § 13 [4]), North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760 (1945), whereas our determination must rest upon whether the requirement of this state's constitution and laws have been satisfied. State ex rel. Utilities Commission v. State, supra.
Accordingly, we proceed to consider if the determination of the State Corporation Commission concerning intrastate class rates is supported by substantial evidence, or is arbitrary, capricious, and thereby void, as asserted by the railroad petitioners.
Article XI, § 7, N.M. Const., grants the State Corporation Commission the power and imposes "the duty of fixing, determining, supervising, regulating, and controlling all charges and rates of railway * * * companies and common carriers within the state * * *" as well as "the power to change or alter such rates * * *." In In re Atchison, T. & S.F. Ry. Co.'s Protest of Rates, 44 N.M. 608, 107 P.2d 123 (1940), this court stated that the end to be accomplished through exercise of the power to alter and change rates was to assure that they not be "unjust, excessive or unreasonable." See also, § 69-7-6, N.M.S.A. 1953.
The State Corporation Commission, in its order No. 2849, now before us, stated as follows:
"Upon investigation, found that class rates applicable between points in New Mexico West of the Line of The Santa Fe Railway from Raton to El Paso and class rates applicable between points in New Mexico West of this Line and points in New Mexico East of this Line found unjust and unreasonable and unduly preferential and prejudicial. Unlawfulness required to be removed."
and further that a prima facie showing had been made that "the assailed class rates are unlawful." It was the conclusion of the Commission "that the assailed rates are unduly prejudicial to points in Western New Mexico and unduly preferential to points in Eastern New Mexico," and that they are therefore unlawful "to the extent they exceed the schedules applicable between points in Eastern New Mexico."
As we view the proof presented at the hearing on the petition herein, the complaint *434 of the State Corporation Commission results from the fact that three intrastate rates have been in effect in the state for a good many years  one east of the line of the Santa Fe from Raton to El Pason, one west of that line, and the third from one area to the other. It would seem self-evident that when the state is divided, as has been done here, so that one part is within one rate structure territory, whereas another part comes within a different territory, some advantage to one and disadvantage to another will result. Does this mean that unlawful discrimination is present so as to justify a requirement that the rates be altered downward?
Although we recognize that circumstances might arise where discrimination against a given locality might operate so as to be unjust and unreasonable and require rectification, see Brazos River Harbor Nav. Dist. v. Abilene & S.F. Ry. Co., 322 I.C.C. 529 (1964), we do not perceive that the situation here presented is of this character. The proof establishes that by virtue of the dividing line between different territories, some inequities may be present. This has happened here by virtue of the fact that Albuquerque, the largest city and principal trade center of the state, lies in the eastern area whereas Gallup, for example, lies in the west. In all cases where businesses in Albuquerque compete with those located in the west area, those located in Albuquerque have an advantage. It appears that there is substantial competition between businesses of certain types in the two communities. We are impressed that the proof in this regard was directed primarily at disadvantages resulting from the differences in interstate rates east and west of the line, rather than disparities in intrastate class rates. This is certainly true concerning furniture about which there was considerable testimony. We do not see in the proof presented that any particular or substantial competitive disadvantage is present in the western area by virtue of the differences in rate schedules. Although the record shows that only six or seven per cent of the less-than-carload, intrastate, class-rate traffic moves in the western area, this situation has developed because of factors not directly related to rates, viz., population density and railroad service facilities.
To uphold what is here attempted by the Commission amounts to elimination for intrastate rate purposes of the line, whereby for interstate rate purposes the eastern part of the state is placed within the southwestern territory and the western part within the Mountain-Pacific territory. In other words, it amounts to an effort to move the dividing line westward to the New Mexico-Arizona line, and would in effect fix rates state-wide, rather than on a parallel with territories as recognized by the Interstate Commerce Commission for interstate rate-making purposes.
In 1951 the present dividing line running through the state was voluntarily accepted by the railroads as reasonable for interstate purposes upon request of the State Corporation Commission, thereby giving eastern New Mexico some rate reduction and creating some discrepancies within the state. Class Rate Investigation, 1939, 281 I.C.C. 213, 290 (1951). Intrastate rates have since then been similarly established in relation to the areas thereby created. We do not see in the record here presented any evidence of material discrimination against, or disadvantages to the western part of the state by virtue of the intrastate class rate structure sought to be altered  practically all the proof dealt with Gallup and its competitive position vis-a-vis Albuquerque, and with reference to interstate rates. To the contrary, it would appear that there is no basis for the order entered by the State Corporation Commission beyond its purpose to eliminate the consequences which follow naturally from the division of the state, and its desire to give the western part of the state the same rate base as the eastern part. While we understand and appreciate the interest and desire motivating the order, it cannot be enforced *435 without substantial proof that it will result in eliminating "unjust, excessive or unreasonable" rates, or undue prejudice or preference resulting therefrom. The State Corporation Commission's finding that it does this has no substantial support in the proof and, accordingly, the order here being considered must be denied enforcement sought by the Commission.
It is so ordered.
NOBLE, C.J., and CARMODY, J., concur.