540 P.2d 818

**In the Matter of George VALDEZ and Albert Garcia, alleged mentally ill Individuals.**

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**George VALDEZ and Albert Garcia, Defendants-Appellants.**

**No. 10037.**

Supreme Court of New Mexico.

Sept. 5, 1975.

Coors, Singer & Broullire, Robert H. Borkenhagen, Albuquerque, for appellants.

David L. Norvell, Atty. Gen., Louis Druxman, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

MONTOYA, Justice.

This is an appeal from a judgment of the Bernalillo County District Court which resulted in the involuntary civil commitment of defendants, Albert Garcia and George Valdez, pursuant to § 34–2–5, N.M.S.A., (Supp.1973).

In June 1959, a jury found George Valdez unable "to understand the nature and object of the proceedings against him or to comprehend his own condition in reference to such proceedings and to make a rational defense, and that the defendant is an insane person or lunatic; * * *." He was ordered to the New Mexico State Penitentiary. On November 27, 1961, Mr. Valdez was ordered transferred to the New Mexico State Hospital.

On August 16, 1961, Albert Garcia was found to be mentally ill and was hospitalized for an indefinite period at the New Mexico State Hospital. Both defendants have remained in the State Hospital since the time of their original commitments, except for a few brief absences.

Motions were filed on behalf of both defendants on August 10, 1973, in the Bernalillo County District Court seeking their discharge from the State Hospital. On December 19, 1973, a consolidated commitment hearing was held in the district court for both defendants. Subsequently, the trial court found that the only issue before it was to determine whether the defendants should continue to be committed to the State Hospital; that the court was without venue to consider employment conditions within the hospital; that to the extent facilities, equipment and personnel are available, defendants received treatment in accordance with the legislative intent required by the statute for the hospitalization of the mentally ill; and that defendants are mentally ill and should continue to remain in the State Hospital.

Further, the trial court concluded that the State offered sufficient evidence that defendants were mentally ill and were in need of care, custody or treatment in a mental health facility and, because of their illness, they lacked sufficient insight or capacity to make responsible decisions with respect to their custody, care or treatment. In addition, the court concluded that both defendants had the constitutional right to be treated in a manner best calculated to return them to society as soon as possible, and that it was the duty of the State to provide them with treatment in accordance with the highest standards accepted in medical practice.

On appeal, defendants raise three major points: That the trial court erred in (1) not granting defendants a hearing to determine whether they would receive treatment consistent with their constitutional rights; (2) committing defendants without proof beyond a reasonable doubt; and (3) refus-

ing to consider the question of employment compensation for patients at the State Hospital.

This court disagrees with defendants' first contention on two grounds. First of all, defendants' pleadings contained no allegation as to the constitutional inadequacy of the treatment they received, but during trial counsel continually attempted to present evidence on this matter over the objections of the State. Such a situation is governed by Rule 15(b), Rules of Civil Procedure for the District Courts of the State of New Mexico,[1] which states in pertinent part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, * * *. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended * * *."

As can be clearly seen from the record, the State did not give its assent, express or implied, to trial of this issue, neither party made a motion for amendment of the pleadings, nor did the court allow any such amendment sua sponte. Thus, this issue was not properly before the trial court. In the case of *McLean v. Paddock,* 78 N.M. 234, 240–41, 430 P.2d 392, 398–99 (1967), involving fraud and misrepresentation, this court made the following statement which is clearly applicable to the present controversy:

> *"This is not a situation where evidence on the issue was received without objection and the question thus treated as if it had been raised by the pleadings or by trial amendment thereto,* (Citations omit-

ted). *The record before us is replete with objections* to the admission of any evidence concerning fraud, misrepresentations or any parol variance of the written instruments. *No trial amendment was offered either for the purpose of making such evidence and any issue presented thereby admissible or to make the pleadings conform to the proof.* Indeed, Paddocks do not assert that a trial amendment was either offered or permitted. The author, 3 Moore's Federal Practice, p. 996, in discussing Rule 15(b), identical with our rule 15(b) (§ 21–1–1(15)(b), N.M.S.A., 1953) permitting trial amendments, said *'where evidence has been admitted over objection and the pleadings have not been amended, no amendment can be implied.'* (Citation omitted.)" (Emphasis added.)

Secondly, as to this initial point, it is the position of this court that before the constitutional adequacy of treatment at the State Hospital is determined, the State Department of Hospitals and Institutions should be present as a party to the action. Such a result is dictated by Rule 19, Rules of Civil Procedure for the District Courts of the State of New Mexico:

> "(a) Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. * * *"

1. Rules of Civil Procedure for the District Courts of the State of New Mexico are contained in §§ 21–1–1(1) through 21–1–1(94), N.M.S.A., 1953 (Repl.Vol. 4, 1970).

In the present case, the Department of Hospitals and Institutions should have been joined under Rule 19, Rules of Civil Procedure, supra, since it obviously has a great deal of interest in a proceeding which could very possibly result in an order greatly affecting its policies and operations. Any disposition of this matter in the department's absence could greatly impair or impede its ability to protect its interest. Because the department was not joined, the trial court was lacking in jurisdiction and was thus correct in not rendering a judgment concerning the constitutional adequacy of treatment provided by the State Hospital.

Next, we will briefly consider defendants' contention that the trial court erred when it refused to consider the question of employment compensation for patients working at the State Hospital. It appears that this question has become moot. Pursuant to the decision in *Souder v. Brennan*, 367 F.Supp. 808 (D.D.C.1973), the Department of Hospitals and Institutions has been ordered by the Secretary of Labor to apply minimum wage and overtime compensation provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1970), to patients employed at all New Mexico institutions providing residential care for the mentally ill. We were advised at oral argument that regulations have been made and implemented concerning patient compensation pursuant to that directive. Accordingly, there is no actual controversy and only a moot question exists; therefore, this court need not determine it. *Reeder v. Bowman*, 64 N.M. 7, 322 P.2d 339 (1958); *State v. Vogel*, 39 N.M. 122, 41 P.2d 1107 (1935).

Lastly, we shall consider the allegation that the trial court erred in committing defendant George Valdez upon evidence which failed to show beyond a reasonable doubt that he was dangerous to himself or others. This is an important legal question which is a matter of first impression in New Mexico. The pertinent statutes do not prescribe the standard of proof. Traditionally, the question of standard of proof has been left for judicial resolution; therefore, this court has no hesitation in finally deciding the matter. See *Woodby v. Immigration Service*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

Defendant contends that because civil commitment results in a substantial impairment of his rights, the due process requirements of the U.S.Const. amends. V and XIV, would be violated unless the State was required to prove mental illness beyond a reasonable doubt. From the outset it should be recognized that due process is a rather malleable principle which must be molded to the particular situation, considering both the rights of the parties and governmental interests involved. See *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

The civil commitment process, though technically a civil proceeding, has elements of both criminal and civil proceedings, a hybrid procedure, with some of the rights guaranteed to criminal defendants applicable to defendants in commitment hearings. See *Gomes v. Gaughan*, 471 F.2d 794 (1st Cir. 1973). Thus, compliance with the due process requirements, as far as the burden of proof in commitment proceedings for the mentally ill is concerned, is mandated.

The pertinent state statute is § 34–2–5, supra, especially subsection "g" which allows the court several commitment options:

"If, upon completion of the hearing and consideration of the record, the court finds that the proposed patient:

(1) is mentally ill; and

(2) (a) because of his illness is likely to injure himself or others if allowed to remain at liberty; or

(b) is in need of custody, care or treatment in a mental hospital or mental health facility, or is in need of any

alternative course of mental health care; and

(3) because of his illness, lacks sufficient insight or capacity to make responsible decisions with respect to his custody, care or treatment, * * *."

Nowhere is there mention of exactly what standard of proof must be met by the State in order to justify commitment. Since there has also been no previous New Mexico case law on this particular point, the courts have been without guidance. Undoubtedly, patients have been committed on the basis of a mere preponderance of the evidence, the typical standard for civil actions. This court is of the opinion that this standard is definitely constitutionally unacceptable for civil commitment hearings, in view of the fact that fundamental liberties of the patient are so often at stake.

Decisions in federal court and other state courts have been divided, though probably the majority have adopted the stricter reasonable doubt standard. See *In Re Ballay,* 157 U.S.App.D.C. 59, 482 F.2d 648 (1973); *Lessard v. Schmidt,* 349 F. Supp. 1078 (E.D.Wis.1972); *In Re Pickles' Petition,* 170 So.2d 603 (Fla.App.1965). For several reasons this court declines to accept this viewpoint, and instead adopts the standard of "clear and convincing" evidence as the better rule.

■ In the civil commitment situation the interests of the State are pitted against restrictions on the liberty of the individual. The specific question which needs to be answered is whether there exists sufficient State interests to counterbalance the loss of individual liberty and justify the application of this particular burden of proof. Based on the language of § 34–2–5, supra, it appears that the aim of the State is to first protect society from the mentally ill, a manifestation of the State's police power, see *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), and also protect the mentally ill from themselves, while at the same time providing care and treatment, as parens patriae.

Mental illness is, of course, not a crime. Thus, patients must be afforded some type of effective treatment since their liberty is abridged; mere custodial care is not sufficient. As the record in this case indicates, the standard of treatment is presently not the highest possible according to contemporary psychiatric standards. But due to financial inadequacies, lack of facilities and personnel and other problems, the standard of treatment is as high as is currently feasible. Besides residential care, the basic treatment for the average patient at the State Hospital consists of medication, a "milieu ward type of environment," work therapy and activities related to and centered around certain members of the hospital staff. Although individuals who are civilly committed lose a good portion of their personal liberty, they are provided with needed treatment and care, while at the same time society is being benefited. Ideally, the individual is rehabilitated, society is being protected from antisocial conduct, the burden and cost of care and treatment is borne by the State, and the individual is eventually returned as a productive member of society. We believe the State's interests are sufficient and the realities of treatment, though not ideal, are adequate to justify subjecting individuals to possible commitment based on this new standard of proof.

■ Another important factor must also be kept in mind. Psychology and psychiatry are hardly exact sciences. Because our state statute identifies those who are subject to commitment, accurate terminology is of utmost importance. Yet, psychiatrists and psychologists alike are unable to reach a consensus as to what exactly is "mental illness." Where there is sometimes disagreement as to the meaning of a diagnosis of "mental illness," even among the disciplines concerned with human behavior, it would seem that the highest standard of proof would be desirable, but at the same time the question arises whether the reasonable doubt standard is workable within this particular framework. In the

opinion of this court, proof beyond a reasonable doubt is too stringent a standard. As stated by the court in the case of *State ex rel. Hawks v. Lazaro,* 202 S.E.2d 109, 126–27 (W.Va.1974):

> " * * *. At this level of medical knowledge there may be many urgent cases in which it is impossible to exclude every reasonable doubt, and it appears that the likelihood of harm to individuals and society because of a standard of proof which makes commitment almost impossible greatly outweighs the likelihood of harm to the individual attributable to a less restrictive standard. Proof that is clear, cogent, and convincing is the highest standard of proof possible at the current state of the medical arts."

The standard of "clear and convincing" evidence is "no stranger to the civil law." *Woodby v. Immigration Service,* supra. Its application will have no deleterious effect on commitment procedure itself and will assist in avoiding the inherent vagueness and uncertainty in the area of psychological and psychiatric fact-finding, while at the same time providing adequate protection for patients' constitutional liberties. For these reasons, we hold that the standard of "clear and convincing" proof shall be applied in this and all future civil commitment proceedings. We have defined that standard in the case of *In Re Sedillo,* 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972), where we said:

> "This court has held that clear and convincing evidence is something stronger than a mere 'preponderance' and yet something less than 'beyond a reasonable doubt.' (Citation omitted.) For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is

left with an abiding conviction that the evidence is true. (Citations omitted.)"

A review of the record reveals that defendant George Valdez was committed in accordance with § 34–2–5, supra. Both finding of fact No. 9 and conclusion of law No. 5 state that George Valdez is:

> " * * * a mentally ill individual and is in need of care, custody or treatment in a mental hospital or mental health facility, and because of his illness lacks sufficient insight or capacity to make responsible decisions with respect to his custody, care or treatment."

The trial court made no mention of the burden of proof which must be met by the State, but states only that " * * * the State has offered sufficient evidence * * *." However, the record indicates that there was sufficient evidence to support this newly enunciated standard of clear and convincing proof, and thus this court cannot overturn the finding of the trial court. It is a long-standing rule in New Mexico that findings of fact which are supported by substantial evidence will not be disturbed on appeal. *Shirley v. Venaglia,* 86 N.M. 721, 527 P.2d 316 (1974). If the evidence shows that the decision of the trial court is based on reasonable, substantial and probative evidence, so that it can be said that a reasonable person might have reached the same conclusion, we hold that the decision of the trial court should be affirmed.

In view of the foregoing, we need not consider defendants' final contention.

The judgment of the trial court is affirmed in all respects.

It is so ordered.

McMANUS, C. J., and OMAN, J., concur.