**In the Matter of Lillian PERNELL, an alleged mentally ill Individual.**

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Lillian PERNELL, Defendant-Appellant.**

**No. 3588.**

Court of Appeals of New Mexico.

Jan. 16, 1979.

Frederick H. Sherman, Sherman & Sherman, Deming, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Leslie D. Ringer, Chief Counsel, Patrick Lauth, Asst. Counsel, Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

This appeal involves the involuntary commitment of Pernell to the New Mexico State Hospital for evaluation and treatment, not to exceed thirty days. Statutory references to the Mental Health and Developmental Disabilities Code are either to N.M.S.A.1978 or to N.M.S.A.1978 (Supp. 1978). A variety of contentions are presented. Compare *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974). We discuss: (1) right to appeal; (2) mootness; (3) notice; (4) quantum of proof; (5) propriety of the commitment order as to mental disorder, serious bodily harm and least drastic means; and (6) stay pending appeal.

*Right to Appeal*

The State has not questioned Pernell's right to appeal the trial court's order. We have considered the right to appeal because of statutory provisions. Section 43–1–12(B) —pertaining to extended commitment of adults, § 43–1–13(D)—pertaining to involuntary commitment of developmentally disabled adults to residential care, and § 43–1–16(F)—pertaining to residential treatment and habilitation of minors, refer to the right to an "expeditious appeal" of decisions under those sections. Section 43–1–11, under which Pernell was committed, does not refer to an appeal. With this legislative scheme, it would appear that the Legislature did not intend that commitments under § 43–1–11 should be appealed.

Prior to the 1965 amendment of N.M. Const., art. VI, § 2, the right of appeal was "purely statutory". *State v. Chacon*, 19 N.M. 456, 145 P. 125 (1914). The 1965 amendment, however, provides "an aggrieved party shall have an absolute right to one appeal." Pernell's personal interests were adversely affected by the order of involuntary commitment. She was an aggrieved party. See *Matter of Berry*, 521 F.2d 179 (10th Cir. 1975), cert. denied, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975), reh.

denied, 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 414 (1975). Her notice of appeal was timely filed; there are no procedural problems in connection with the perfection of the appeal. See *Olguin v. State*, 90 N.M. 303, 563 P.2d 97 (1977); *Hudson v. State*, 89 N.M. 759, 557 P.2d 1108 (1976), cert. denied, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977). Concerning a penitentiary inmate, *Rodriguez v. District Ct. of First J. D., Co. of Santa Fe*, 83 N.M. 200, 490 P.2d 458 (1971) stated "that the prisoner had an undoubted right to appeal" under the amended constitutional provision.

█ Pernell had a right to appeal under N.M.Const., art. VI, § 2 even though no appeal was provided for by statute.

*Mootness*

The State moved to dismiss the appeal as moot. Pursuant to the trial court's order, Pernell was admitted to the New Mexico State Hospital for a period not to exceed thirty days. The admission was on May 2, 1978; the commitment to the hospital expired on May 31, 1978. The motion asserts Pernell voluntarily remained in the hospital as a patient from May 31 to June 26, 1978 when she was discharged pursuant to her own request. The motion asserts these facts were established by an attached affidavit; no affidavit was attached to the motion. Facts concerning Pernell's hospital stay subsequent to May 31, 1978 have not been established. See *Hamman v. Clayton Municipal School District No. 1*, 74 N.M. 428, 394 P.2d 273 (1964). However, we did not deny the motion on this ground; rather, we assumed the allegations stated in the motion were factual.

The claim of mootness was based on the fact that Pernell was no longer in the hospital pursuant to the trial court's order. Thus, Pernell can obtain no practical relief from that order on appeal. *Atchison, T. & S.F. Ry. Co. v. State Corporation Com'n*, 79 N.M. 793, 450 P.2d 431 (1969) points out that New Mexico appellate courts will not decide questions "wherein no actual relief can be afforded". See also *New Mexico Bus Sales v. Michael*, 68 N.M. 223, 360 P.2d 639 (1961). Under New Mexico decisions, an appeal will be dismissed if the question presented is moot; mootness includes the question of whether the appellate court can provide "actual relief". The State relied on these decisions and supported the claim of mootness by citing several memorandum decisions from New York which refused to review, on the ground of mootness, the propriety of a commitment to a mental institution where the person involved had been released from the commitment.

The State failed to consider *City of Albuquerque v. Campos*, 86 N.M. 488, 525 P.2d 848 (1974). This case involved the propriety of a strike by municipal employees. The strike was settled while the appeal was pending; Campos contended the legal issues raised in the appeal were moot. After listing various New Mexico decisions on mootness, the opinion states:

It is true that in those cases we held this Court would not pass upon questions which had become moot. We do not propose to change that rule. However, the questions here presented are of great public interest and importance, and we will not permit the settlement of the dispute by one or more of the parties to terminate the right of the public to have these questions resolved on appeal. * * If, as in the present case, the questions of public importance are likely to recur, additional reason exists for the exercise by this court of its inherent discretion to resolve those questions.

*In re Ballay*, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973) followed a similar approach in connection with the review of the propriety of a commitment to a mental hospital when the patient had been discharged while the appeal was pending. *Ballay* states:

[T]hat consideration of issues of public importance "ought not to be, as they might be, defeated by short term orders, capable of repetition, yet evading review * * *."

In this case we have a short-term order, a commitment not to exceed thirty days. Such an order is capable of repetition; the transcript refers to an involuntary commit-

ment of Pernell to the State Hospital in June, 1977. In argument, the State asserted that Pernell was involuntarily committed from June 7 to September 14, 1977. As to whether Pernell's involuntary commitment was of public importance, *Ballay,* supra, states: "[W]e cannot be oblivious to the importance of * * * the number of persons who are affected" by involuntary commitment orders.

▮ The mootness motion was properly denied on the basis of *City of Albuquerque v. Campos, supra,* and *In re Ballay, supra.*

*Notice*

Pernell asserts she was denied due process by the denial of fair notice of hearing. This due process claim is a claim that statutory requirements were not met. There are two issues concerning notice.

(a) Section 43–1–11(A) states in part: If the department [§ 43–1–3(G)], physician or evaluation facility decides to seek commitment of the client for evaluation and treatment, a petition shall be filed with the court within five days of admission requesting such commitment. The petition shall include a description of the specific behaviors or symptoms of the client which evidence a likelihood of serious harm to the client or others, and shall also include an initial screening report by the evaluating physician individually, or with the assistance of a mental health professional, or if a physician is not available, by a mental health professional acceptable to the court.

We assume that these requirements, as to the contents of the petition, apply to the petition in this case filed by the district attorney under § 43–1–11(E).

▮ Pernell claims the petition filed by the district attorney did not include "a description of the specific behaviors or symptoms" of Pernell. This issue is not properly before us; no claim as to the sufficiency of the petition was raised in the trial court. See *Adoption of Doe,* 89 N.M. 606, 555 P.2d 906 (Ct.App.1976). In addition, the claim is

frivolous. An initial screening report by an evaluating physician was attached to, and was a part of, the petition. That report lists specific behaviors and symptoms.

(b) Section 43–1–11(E) provides:

The court may issue a summons to the proposed client to appear at the time designated for a hearing which shall be not less than five days from the date the petition is served.

The "not less than five days" requirement was not met in this case. The petition was filed on April 28, 1978; Pernell's attorney received "the papers reflecting the problem" and conferred with Pernell on that day. The hearing was held on May 1, 1978.

▮ Pernell objected to the hearing on May 1, 1978, but not on the basis of the time requirement. Pernell wanted a continuance of the hearing because she wanted "a medically trained lawyer". No issue of the five-day time requirement having been raised in the trial court, it is not before us for review. *Adoption of Doe, supra.* We add that there is no claim of prejudice resulting from the failure to comply with the time requirement. See *Matter of Doe,* 88 N.M. 481, 542 P.2d 61 (Ct.App.1975).

*Quantum of Proof*

▮ Under § 43–1–11(C), the trial court must find the basis for a commitment by clear and convincing evidence. Pernell claims due process would be violated unless her commitment was based on proof beyond a reasonable doubt. Pernell's argument in support of a reasonable doubt standard was considered, and rejected in *Matter of Valdez,* 88 N.M. 338, 540 P.2d 818 (1975). *Valdez* adopted the clear and convincing standard and rejected the claim that due process required the reasonable doubt standard.

*Propriety of the Commitment Order*

Under § 43–1–11(C), the required findings, by clear and convincing evidence are:

(1) as a result of a mental disorder the client presents a likelihood of serious harm to himself or others;

(2) the client needs and is likely to benefit from the proposed treatment; and

(3) the proposed commitment is consistent with the treatment needs of the client and with the least drastic means principle.

The trial court found:

1. That as a result of an apparent mental disorder, the respondent, Lillian Pernell, presents a likelihood of danger to herself or others.

2. That the respondent's condition is likely to benefit or improve with the proposed treatment.

3. The proposed commitment is consistent with the least drastic means principle.

■ Pernell raises a variety of issues directed to the findings required by the statute. Some of the issues pertain to evidence. Pernell's arguments concerning the sufficiency of the evidence proceed either on the basis that this Court should weigh the evidence or on the basis that the evidence should be reviewed in the light most favorable to Pernell. Neither basis is correct. We weigh neither the evidence nor its credibility; our review is concerned with whether substantial evidence supports the trial court's findings. In such a review, we consider the evidence in the light most favorable to the trial court's findings. *Getz v. Equitable Life Assur. Soc. of U. S.*, 90 N.M. 195, 561 P.2d 468 (1977), cert. denied, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977); *Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977); *Matter of Valdez, supra.*

**A. Mental Disorder**

■ 1. Pernell asserts the trial court did not find that she had a mental disorder; rather, the finding was of an "apparent" mental disorder. According to Pernell, "the court was not sure whether there was mental disorder as the finding was only as to an apparent mental disorder. This is not a finding of a mental disorder by clear and convincing evidence." The trial court used "apparent" in the sense of readily perceptible to the senses, unobstructed and uncon-

cealed. See Webster's Third New International Dictionary (1966). Use of the word "apparent" added nothing to the trial court's finding of mental disorder; on the other hand, use of "apparent" does not establish that a finding of mental disorder was not made, or not made on the basis of clear and convincing evidence.

■ 2. Section 43–1–3(N) defines mental disorder as follows:

N. "mental disorder" means the substantial disorder of the person's emotional processes, thought or cognition which grossly impairs judgment, behavior or capacity to recognize reality[.]

Pernell states that "[n]o facts were found as to any requirements" under this definition. Pernell did not request that the trial court "find" the elements of this definition. In addition, the trial court was not required to make such findings even if requested to do so. Findings of fact "shall consist only of such ultimate facts as are necessary to determine the issues in the case". Rule of Civ.Proc. 52(B)(a)(2). Ultimate facts are to be distinguished from evidentiary facts. *Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968). The "mental disorder" was an ultimate fact; the elements of the definition of mental disorder were evidentiary facts which the trial court was not required to find. See *McCleskey v. N. C. Ribble Company*, 80 N.M. 345, 455 P.2d 849 (Ct.App. 1969).

3. Pernell contends there was insufficient evidence that she had a mental disorder as defined in § 43–1–3(N). We disagree.

■ Pernell had a history of admissions to state and private hospitals over a ten-year period. Her condition was stabilized by taking a prescribed medication (Prolixin), however, she had stopped taking it for a minimum of six weeks. The evaluating physician testified Pernell suffered "from a mental disorder called chronic schizophrenia, undifferentiated type, and yes, she does present a danger to herself and others when she does not take her medication to the extent that she could become very explosive

and apparently she and her mother do not get along on a regular basis when she's not on her medication." "I'm saying that she could become violent when she's off her medication and her history shows that she has become violent when she's off her medication". The evaluating physician testified that when Pernell was interviewed she was "very agitated", "was disassociative", "did not want to be on medication" and "didn't want anyone visiting her."

We need not review additional evidence. The foregoing evidence is substantial evidence of a substantial disorder of Pernell's emotional process or thought which grossly impaired her judgment or behavior.

    4.  Section 43–1–5, states:

Neither the fact that a person has been accepted at or admitted to a hospital or institutional facility, nor the receiving of mental health or developmental disability treatment services, shall constitute a sufficient basis for a finding of incompetence or the denial of any right or benefit of whatever nature which he would have otherwise.

■■■ Pernell asserts the evaluating physician's testimony should be disregarded because in giving his opinion of Pernell's condition, he took into consideration her history of prior hospitalizations. This argument is based on a misreading of § 43–1–5. Under that statute, the fact of a prior hospitalization *in itself* is an insufficient basis "for a finding of incompetence or the denial of any right or benefit . . . which [Pernell] would have otherwise." Section 43–1–5 does not bar consideration of the history of hospitalizations, along with other evidence, in reaching a conclusion as to Pernell's current condition.

### B.  Serious Bodily Harm

Section 43–1–3(L) states:

    L.  "likelihood of serious harm to oneself" means that it is more likely than not that in the near future the person will attempt to commit suicide or will cause serious bodily harm to himself by violent or other self-destructive means as evidenced by behavior causing, attempting

or threatening the infliction of serious bodily harm to himself[.]

Section 43–1–3(M) states:

    M.  "likelihood of serious harm to others" means that it is more likely than not that in the near future the person will inflict serious, unjustified bodily harm on another person or commit a criminal sexual offense as evidenced by behavior causing, attempting or threatening such harm, which behavior gives rise to a reasonable fear of such harm from said person[.]

Both definitions refer to serious bodily harm.

■■■ 1.  The trial court's finding is that Pernell "presents a likelihood of danger to herself or others." Pernell suggests that the finding is deficient because the words "serious harm" were not used in the finding. See § 43–1–11(C)(1). One meaning of "serious" is "attended with danger", as in the phrase "a serious injury". One meaning of "harm" is "injury". "Danger", in turn, is defined as "the state of being exposed to harm: liability to injury". Webster's Third New International Dictionary (1966). When it can reasonably be done, findings of the trial court are to be liberally construed in support of the trial court's judgment. *Universal C. I. T. Corp. v. Foundation Reserve Ins. Co.*, 79 N.M. 785, 450 P.2d 194 (1969); *H. T. Coker Const. Co. v. Whitfield Transp., Inc.*, 85 N.M. 802, 518 P.2d 782 (Ct.App.1974). Considering all of the trial court's findings, and the above definitions, a reasonable construction is that the trial court used the word "danger" to mean "serious harm". In this case, the finding was sufficient. We do not, however, commend findings which, by departing from the statutory language, invite problems as to whether the requisite findings were made.

2.  Pernell asserts there was no evidence to show that she had the "likelihood of serious harm to oneself", as that phrase is defined in § 43–1–3(L). She contends there was no evidence that she would be harmed, or that any harm would be serious, or that

it would be in the near future, or that she would cause any harm, or that it would be by violent or self-destructive means.

This argument overlooks the portion of the definition which requires "behavior causing, attempting or threatening the infliction of serious bodily harm". The behavior does not have to have caused the requisite harm; behavior threatening the requisite harm is sufficient.

■ There was evidence that Pernell had not taken the stabilizing medicine for at least six weeks. There was also evidence that she had not taken this medicine for six months. Without further medication she would deteriorate. "[S]he may decompensate to the point that she does not physically take care of herself . . . in most cases this is what happens to schizophrenics. They become withdrawn so then you see passive neglect—not eating properly, so nutritionally their body decompensates." The behavior of Pernell was the fact of not taking her medication. The refusal to take her medication was self-destructive because the refusal would result in a nutritional deficiency. The nutritional deficiency was likely in the near future. This was substantial evidence supporting the finding of the likelihood of serious bodily harm to herself.

■ 3. Pernell asserts there was no evidence that she had the "likelihood of serious harm to others" as that phrase is defined in § 43–1–3(M). As in the immediately preceding discussion, she argues that no behavior of hers had caused such harm to others. Again we point out that the threat of such harm is sufficient. Pernell also contends there was no evidence that she "will" inflict harm on others, or that such harm would be either serious or unjustified, or that such harm was either "likely" or "in the near future".

■ There was evidence that without her medication "anyone could set her [Pernell] off very quickly. She does have a temper, so she can be explosive." Prior to her hospitalization in 1977, she had thrown hot water at her mother. She resented her mother with whom she lived. The evaluat-ing physician testified: "I'm saying that she could become violent when she's off her medication and her history shows that she has become violent when she's off her medication". There was evidence that when interviewed, Pernell was agitated, could not maintain a coherent conversation and was verbally abusive to her mother. The physician likened Pernell to a seven year old child "who would not get what he or she would want, could throw a temper tantrum and strike out at somebody and hurt them." "[S]he becomes very, very agitated with her mother and could easily strike out when she's upset." The foregoing was substantial evidence that, as a result of not taking her medication, she was a threat to inflict serious, unjustified harm on her mother and that this was likely conduct in the near future.

4. We have reviewed the evidence as to likelihood of serious harm to herself and likelihood of serious harm to others. Section 43–1–11(C)(1), however, is worded in the alternative. A finding of likelihood of serious harm, either to Pernell *or* to another, would have been a sufficient finding.

C.   Least Drastic Means

Section 43–1–11(C)(3) requires a finding that "the proposed commitment is consistent with the treatment needs of the client and with the least drastic means principle." Section 43–1–3(D) states:

D.   "consistent with the latest [sic] drastic means principle" means that the habilitation or treatment and the conditions of habilitation or treatment for the client separately and in combination:

(1) are no more harsh, hazardous or intrusive than necessary to achieve acceptable treatment objectives for such client;

(2) involve no restrictions on physical movement nor requirement for residential care except as reasonably necessary for the administration of treatment or for the protection of such client or others from physical injury; and

(3) are conducted at the suitable available facility closest to the client's place of residence[.]

Pernell asserts her commitment to the State Hospital was inconsistent with the least drastic means principle. "The court erred in not allowing hospitalization in Luna County or the surrounding areas and treatment thereafter on an outpatient basis." Thus, Pernell claims the finding required by § 43–1–11(C)(3) was improper because the evidence shows there was a "suitable available facility" for treating her closer to her home than the State Hospital. Section 43–1–3(D)(3).

Pernell had been stabilized on Prolixin during her hospitalization in 1977 and had obtained renewals of the prescription for this medication from a local physician. The medication, a hypodermic injection, had been administered by a public health nurse. Pernell no longer went to the local physician who renewed her prescription because the physician would no longer accept her "SSI". "[T]he basic problem was finding a doctor who was willing to take SSI".

■ Because Pernell had been off her medication for at least six weeks, she needed to be hospitalized in order to be restabilized. Restabilization required careful monitoring and analysis of blood levels every 24 hours to avoid a toxic condition. Because of possible changes in Pernell's condition, restabilization also involved redetermining the proper dosage. After Pernell was restabilized, she could be maintained on an out-patient basis.

The foregoing evidence was undisputed. Pernell's claim is that the restabilization could be done in Luna County. As the trial court pointed out, there was no evidence to support this. The evaluating physician testified: "Most of the physicians in this community choose not to deal with phenothiazines and we've had considerable difficulty in getting some of the physicians to even prescribe the medication. * * * She could not be stabilized in the community as it exists at present." "[M]ost general practitioners in this part of the country are not that familiar with the phenothiazines and do not want to deal with the phenothiazines because they are very tricky." "The problem is, monitoring it closely". This was

substantial evidence that the State Hospital was the closest "suitable available facility." This evidence supports the finding that the commitment was consistent with the least drastic means principle.

*Stay Pending Appeal*

■ Pernell sought a stay, in the trial court, of the commitment order. She advanced two grounds for the proposed stay. One ground was that she was entitled to be released "until she does something wrong. If she does something wrong, then incarcerate her for what she does wrong, not for what is a possibility." This argument overlooks the fact that the statutory authority for a commitment required a likelihood of serious harm to Pernell or others, proved by clear and convincing evidence. The commitment order was not based on a possibility.

The second ground urged for a stay was based on the fact that the commitment was not to exceed thirty days. Pernell pointed out that the commitment time would expire before an appeal could be decided and that the appeal would be moot. We have held that the appeal was not moot.

After the trial court refused to stay the commitment order, Pernell sought a stay in this Court on the basis of Civ.App.Proc. Rule 5. Her motion asked for a stay until there could be a hearing "on its merits", pursuant to § 43–1–10(D), in either Luna, Grant or Dona Ana Counties. We denied the stay. There had already been a hearing, in Luna County, on the merits of a commitment, and a hearing by the trial court on the request for a stay. Section 43–1–10(D) was not applicable; it pertains to a hearing on reasonable grounds for detention after an involuntary, emergency commitment. In this case, the hearing occurred prior to any detention.

On appeal, Pernell argues that denial of the right to bail pending appeal denied her due process. Thus, she proceeds on the basis that a stay of the commitment order should be considered in terms of the criminal bail process rather than in terms of stay

of a civil case. We agree that the provisions for stay of a civil judgment, pending an appeal, are not particularly helpful. See Rule of Civ.Proc. 62(d). However, we decline to specifically adopt the requirements for criminal bail as the basis for considering a stay of the commitment order. See N.M. Const., art. II, § 13; Rules of Crim.Proc. 22, 23, 24. "The civil commitment process, though technically a civil proceeding, has elements of both criminal and civil proceedings, a hybrid procedure, with some of the rights guaranteed to criminal defendants applicable to defendants in commitment hearings." *Matter of Valdez, supra.*

Likening a stay of a commitment order to bail in a criminal case, we assume that Pernell had a "right" to a stay; however, that "right" is not absolute. See *Tijerina v. Baker,* 78 N.M. 770, 438 P.2d 514 (1968).

■ In a criminal case, prior to conviction, the trial court may consider the nature and circumstances of the offense charged in setting bail. Rule of Crim.Proc. 22(b). After conviction, the fact of conviction and the length of the sentence may be considered. Rule of Crim.Proc. 23(c). Similarly, in considering the question of a release during commitment proceedings, the trial court may consider the circumstances alleged, and after ordering a commitment may consider the circumstances as well as the length of the commitment ordered. The trial court will, of course, consider whether the commitment was to residential care or to nonresidential treatment. Section 43–1–11(D).

Appellate review is on the basis of whether the trial court's order in connection with a stay was an abuse of discretion. See *State v. Lucero,* 81 N.M. 578, 469 P.2d 727 (Ct.App.1970).

Because of lack of medication, Pernell's condition was deteriorating. Hospitalization for restabilization was required because Pernell presented a likelihood of serious harm to herself and others. The granting of a stay would have delayed the restabilization. The evidence shows no reasonable alternative to hospitalization and thus no reasonable alternative to the likelihood of serious harm if hospitalization did not occur. The trial court did not abuse its discretion in refusing to stay the commitment.

The order for involuntary commitment is affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.