The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: <u>December 19, 2024</u>

**No. A-1-CA-41992**

**IN THE MATTER OF ISAAC MATA,**
**a person alleged to be in need of**
**mental healthcare.**

**STATE OF NEW MEXICO,**

     Petitioner-Appellee,

v.

**ISAAC MATA,**

     Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Robert Lara, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Lawrence M. Marcus, Assistant Solicitor General
Justin Lauriano, Honors Attorney
Albuquerque, NM

for Appellee

Elliot A. Mohler
Las Cruces, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}     Respondent Isaac Mata appeals his involuntary commitment for a period not to exceed thirty days under the provisions of the Mental Health and Developmental Disabilities Code (the Code), NMSA 1978, §§ 43-1-1 to -25 (1976, as amended through 2024). We affirm.

**BACKGROUND**

{2}     Respondent was admitted to Memorial Medical Hospital (Memorial) in Las Cruces, New Mexico on March 29, 2024, after he attempted suicide by burning down his trailer while he was inside it. On April 16, 2024, the State filed a petition in district court to commit Respondent to the New Mexico Behavioral Health Institute for thirty days. The petition was supported by the affidavit of Hector Perez, a psychiatric nurse practitioner, who testified that he was employed as the primary psychiatric provider at Memorial, was involved in Respondent's admission, and that he had been Respondent's primary treating physician since his admission.

{3}     Perez's affidavit was attached to the petition to the district court seeking a thirty-day commitment. The affidavit served as the initial screening report required by Section 43-1-11(A). Section 43-1-11(A) requires, in relevant part, that an initial screening report be prepared "by the evaluating physician individually or with the assistance of a mental health professional or, if a physician is not available, by a

mental health professional acceptable to the court," and that the report be submitted with the petition.

{4}     Respondent contested the commitment. At the start of the hearing, Respondent's counsel objected to proceeding without a showing by the State that a physician was not available at Memorial to prepare the initial screening report. Respondent argued that without such a showing, the phrase in Section 43-1-11(A), "if a physician is not available," would be superfluous. When the district court asked what would happen to his client if no such showing were made by the State, counsel responded that his client would have to be released. Stating that it was relying on the language of the commitment statute as a whole, the district court found that the Legislature intended for it to be the responsibility of the evaluating facility to apply to the court if they believed a commitment was needed and "there was not a physician available for some reason." Concluding that the preparation of the report by a nurse practitioner, rather than a physician was not "a fatal flaw," the court proceeded with the hearing.

{5}     Perez was sworn as the State's only witness. Perez testified that he is a nurse practitioner, and that he is the primary provider of psychiatric services at Memorial.[1]

---

[1]We note that since Section 43-1-11(A) was enacted in 1977, the Legislature has since provided for the licensing of nurse practitioners, *see* NMSA 1978, § 61-3-23.2(E) (2014, amended 2022), and has permitted them to practice independently, *see* § 61-3-23.2(B)(2) (2014). In 2024, the Legislature required that hospitals and other health facilities give nurse practitioners parity with physicians in credentialing

The State asserted that Perez was "acceptable as an evaluator and a treating physician" in preparing the screening report, and the district court found that Perez is qualified to testify. *See* § 43-1-11(A).

{6} Respondent neither cross-examined Perez nor called a mental health expert of his own, as the Code permits. *See* § 43-1-11(B). At the conclusion of the testimony, Respondent's counsel challenged the sufficiency of the evidence to establish that his client was likely to benefit from the proposed treatment, and that a thirty-day commitment was consistent with the least drastic means principle, two of the three findings necessary for an order of commitment. *See* § 43-1-11(E). The evidence supporting the third required finding, that Respondent was a danger to himself or others, was not challenged.

{7} The district court found that unrefuted testimony established Respondent's high level of risk of harm both to himself and others, Respondent's need for treatment and a likelihood that he would benefit from treatment, and that Respondent's commitment for thirty days was consistent with the least drastic means principle. The district court ordered Respondent involuntarily committed for evaluation and treatment for no more than thirty days. Respondent timely appealed.

---

to serve on the medical staff. *See* § 24A-1-13(B) (2024). Although we note these changes in the law subsequent to the enactment of the Code provision at issue, to resolve this case, we need not, and, therefore, do not, decide whether a psychiatric nurse practitioner should be treated in all cases as equivalent to a physician under the Code.

# DISCUSSION

## I.     The District Court Was Permitted to Accept the Screening Report and Testimony of a Psychiatric Nurse Practitioner Without Evidence Documenting the Unavailability of a Physician

{8}     First, Respondent claims that evidence establishing that there was no physician available at Memorial to prepare the screening report is necessary to support the order of commitment, and, that in the absence of such evidence, the commitment must be vacated and Respondent released. We do not agree.

{9}     Respondent's argument raises a question of statutory interpretation. Respondent's argument focuses on a single phrase in Section 43-1-11(A). That section states as follows:

> A.     Every adult client involuntarily admitted to an evaluation facility pursuant to Section 43-1-10 . . . has the right to a hearing within seven days of admission unless waived after consultation with counsel. If a physician or evaluation facility decides to seek commitment of the client for evaluation and treatment, a petition shall be filed with the court within five days of admission requesting the commitment. The petition shall include a description of the specific behavior or symptoms of the client that evidence a likelihood of serious harm to the client or others and shall include an initial screening report by the evaluating physician individually or with the assistance of a mental health professional *or, if a physician is not available, by a mental health professional acceptable to the court.* The petition shall list the prospective witnesses for commitment and a summary of the matters to which they will testify. Copies of the petition shall be served on the client, the client's guardian, and treatment guardian if one has been appointed, and the client's attorney.

(Emphasis added). Respondent focuses on the italicized phrase above.

4

**{10}** We review questions of statutory construction de novo. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Our ultimate goal in construing a statute "is to ascertain and give effect to the intent of the Legislature." *Id.* (internal quotation marks and citation omitted). We analyze a statute's function within a comprehensive legislative scheme, with reference to the statute as a whole and to statutes dealing with the same general subject matter. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 26, 117 N.M. 346, 871 P.2d 1352. Although we begin by looking to the plain language of the statute, we cannot neglect our obligation to interpret that language in light of "the purpose to be achieved and the wrong to be remedied." *State ex rel. Child., Youth & Fams. Dep't v. Djamila B.*, 2015-NMSC-003, ¶ 25, 342 P.3d 698 (internal quotation marks and citation omitted). Where this Court or our Supreme Court has previously explored the intent of the Legislature in enacting a statute, we rely on that precedent. *See D.W. v. B.C.*, 2022-NMCA-006, ¶ 18, 504 P.3d 559.

**{11}** Respondent claims on appeal that any construction of Section 43-1-11(A) that does not require the State to prove by clear and convincing evidence, whenever a mental health professional prepares the screening report, that no physician was available renders the phrase "if a physician is not available," superfluous. We do not agree.

{12} In order to place the responsibility for preparing the screening report in context, we begin by reviewing the procedures adopted by our Legislature for involuntary commitment. We are guided by our Supreme Court's opinion in *N.M. Dep't of Health v. Compton*, 2001-NMSC-032, 131 N.M. 204, 34 P.3d 593, where the Court reviewed the Code's procedures for involuntary civil commitment. In *Compton*, the Court noted that the Code contemplates three stages of involuntary civil commitment, "each with different procedural requirements." *Id.* ¶ 8. The first two of those procedures, those associated with initial detention and thirty-day involuntary commitment, are relevant to this case.

{13} The Court in *Compton* begins by describing the procedures mandated by the Code for involuntary emergency mental health evaluation and care. *See* § 43-1-10. The provisions governing emergency detention allow a peace officer to transport an individual to a mental health facility for evaluation if one of four factors are met: "(1) the person is otherwise subject to lawful arrest; (2) the peace officer has reasonable grounds to believe the person has just attempted suicide; (3) the peace officer . . . has reasonable grounds to believe that the person, as a result of a mental disorder, presents a likelihood of serious harm to [themselves] or others and that immediate detention is necessary to prevent such harm; or (4) a physician, a psychologist or a qualified mental health professional licensed for independent practice who is affiliated with a community mental center or core service agency has

6

certified that the person, as a result of a mental disorder, presents a likelihood of serious harm to [themselves] or to others and that immediate detention is necessary to prevent such harm." Section 43-1-10(A)(1)-(4). The evaluation facility may involuntarily detain the person for evaluation and treatment "[i]f the admitting physician or certified psychologist [finds] reasonable grounds [for that detention]." Section 43-1-10(E). Respondent was apparently admitted to Memorial pursuant to these procedures following his attempted suicide on March 29, 2024.

{14} The next stage of commitment contemplated by the Code is the thirty-day commitment for evaluation and treatment at issue in this case. *See* § 43-1-11(E). Unlike the emergency commitment, where first a peace officer and then an admitting psychologist or physician are the decision-makers, a thirty-day commitment must be authorized by a court. *Id.* "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Compton*, 2001-NMSC-032, ¶ 7 (internal quotation marks and citation omitted). In accordance with a respondent's right to due process, Section 43-1-11(B) provides a respondent with an evidentiary hearing in which the respondent has a right to counsel, to take the testimony of witnesses, and to conduct cross-examination.

{15} Section 43-1-11(A) addresses the information that must be provided by the evaluating facility to petition the district court to conduct a thirty-day involuntary commitment hearing. The petition to the court described in Section 43-1-11(A) is

the bridge between the initial emergency short-term detention for evaluation and treatment, authorized by a physician or psychologist, and the thirty-day involuntary civil commitment, authorized by a court, following a full due process hearing. Section 43-1-11(A) requires the evaluation and treatment facility to support the petition for a commitment hearing with a screening report sufficient to assure the court that there is a sound professional justification for the commitment proceedings. *See In re v. Dean*, 1980-NMCA-010, ¶ 10, 94 N.M. 45, 607 P.2d 132 (holding that "the [L]egislature made the requirement that the report be attached to the petition to insure that there was sound professional justification for the commitment proceedings").

{16} Given the purpose of the screening report, we construe the Legislature's language directing that "the evaluating physician" prepare a screening report describing the patient's condition, symptoms, and behavior—"or, if a physician is not available," the screening report be prepared by "a mental health professional acceptable to the court"—as a direction to the facility to ensure that one of the facility's most highly qualified professionals prepares the report. Section 43-1-11(A). The statute refers to a "physician[,]" but allows the facility to rely on a different professional if a physician is unavailable. This language gives the facility flexibility to use other highly qualified staff if it does not employ physicians to evaluate and treat its patients, or employs both physicians and other highly qualified

8

professionals. The focus is on ensuring that the report is prepared by a professional who is qualified to provide a sound, professional justification to the district court for conducting a commitment proceeding. The court does not select the professional or supervise the preparation of the report. That is assigned by statute to the facility. The sole role for the district court is the requirement that the court finds the professional chosen by the facility to be "acceptable." *Id.*

{17} We also do not find support in the plain language of the Code for Respondent's argument that the district court must find that a physician was not available to prepare the screening report. Such a finding is not an element required to be proved to justify a thirty-day commitment. Section 43-1-11(E) lists the findings by a court necessary to support a thirty-day commitment. There are only three elements listed: (1) Respondent presents a likelihood of serious harm to self or others; (2) Respondent needs and can benefit from treatment; and (3) the proposed commitment is consistent with Respondent's treatment needs and with the least drastic means principle. Clear and convincing evidence of the unavailability of a physician to prepare the screening report is not included among the enumerated elements in Section 43-1-11(E).

{18} Finally, we do not agree with Respondent's argument that construing the choice of professional as the responsibility of the evaluation and treatment facility, rather than the court, renders the phrase superfluous. The Code creates a complex

procedure for civil commitment, relying on both the evaluation of mental health professionals and, for this thirty-day commitment, on the findings of the court after a full hearing. Direction from the Legislature to the mental health facility and their staff on the procedure to be followed to petition the court for a hearing plays an important role, and is not superfluous.

## II. The District Court's Findings of Fact Are Supported by Sufficient Clear and Convincing Evidence

{19} As already discussed, the district court may order a commitment for evaluation and treatment not to exceed thirty days upon finding by clear and convincing evidence that "(1) as a result of a mental disorder, the client presents a likelihood of serious harm to the client's own self or others; (2) the client needs and is likely to benefit from the proposed treatment; and (3) the proposed commitment is consistent with the treatment needs of the client and with the least drastic means principle." *Id.* This Court reviews the district court's findings for substantial evidence as to each of these statutory elements. *See In re v. Pernell*, ¶ 20, 1979-NMCA-008, 92 N.M. 490, 590 P.2d 638. "[I]n such a review, we consider the evidence in the light most favorable to the trial court's findings." *Id.*

{20} Respondent does not contest the district court's finding that he presents a likelihood of serious harm to himself or to others. He challenges the other two required findings—that Respondent would be likely to benefit from treatment, and that a thirty-day commitment is the least drastic alternative. Respondent claims that

the absence of a direct statement of expert opinion in the hearing testimony[2] renders the evidence insufficient to support the order of commitment. We do not agree that an explicit statement was required. Rather, the district court was permitted to rely on the evidence describing Respondent's diagnosis, his behavior, and his level of cooperation with treatment to reasonably conclude that continued in-patient treatment was necessary, was likely to benefit Respondent, and was the least drastic alternative.

{21}   We "review the evidence in the light most favorable to the prevailing party, indulging all reasonable inferences in support of the verdict and disregarding all inferences or evidence to the contrary." *State ex rel. N.M. Dep't of Hum. Servs. v. Williams*, 1989-NMCA-008, ¶ 7, 108 N.M. 332, 772 P.2d 366. Respondent was admitted to Memorial after attempting suicide by burning down his trailer while he was inside it. Perez testified at the hearing to his diagnosis of Respondent with schizoaffective disorder, and described Respondent's thought process as continuing to be "highly disorganized." Perez described Respondent as threatening homicide, and naming family members and peers as potential victims.

{22}   Perez reported that Respondent had repeated "outbursts," generally arising from internal stimulation rather than any outside stimulus. Staff was required to be

_____

[2]Perez's affidavit does state explicitly that Respondent was likely to benefit from treatment and that in-patient treatment was the least drastic alternative, but testimony to this effect was not elicited by the State at the hearing.

vigilant and to intervene to redirect him and to provide emergency medication due to his outbursts. Perez also testified that Respondent needed to comply with his prescribed medication regime to improve, and that he could not and would not follow a medication regime on his own. He needed staff to administer the medication.

**{23}** This evidence is sufficient to support the district court's findings that Respondent needed treatment and would likely benefit from it. The danger of another suicide attempt or an attempt to murder a family member or peer, together with Respondent's inability to take necessary medication if released, supports the district court's finding that involuntary in-patient treatment is the least drastic alternative for Respondent.

**CONCLUSION**

**{24}** For these reasons, we affirm the district court.

**{25}** **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**JACQUELINE R. MEDINA, Judge**

12