1997-NMCA-089

946 P.2d 232

**Michael Paul LUCERO,
Petitioner–Appellee,**

v.

**Elizabeth PINO, Respondent–Appellant.**

No. 17748.

Court of Appeals of New Mexico.

July 8, 1997.

Gail Wade Brownfield, Alamogordo, for Petitioner–Appellee.

Jane Gagne, Andre–Wells & Associates, P.C., Albuquerque, for Respondent–Appellant.

## OPINION

APODACA, Judge.

1. This appeal involves M.A. a child born to the parties out of wedlock. Defendant (Mother) appeals the denial of her NMRA 1997, 1–060(B) motion for relief from two different judgments. Three issues are presented on appeal: (1) whether the proceedings resulting in the removal of the child from Mother's custody denied Mother of procedural and substantive due process; (2) whether the order removing the child from Mother's custody was void; and (3) whether the Family Violence Protection Act, NMSA 1978, Sections 40–13–1 to –8 (Repl. Pamp.1994 & Cum.Supp.1996) (the Protection Act), is facially unconstitutional. Because we determine that the first and second issues raised on appeal are moot and Mother's constitutional challenge to the Protection Act is without merit, we affirm.

## I. HISTORICAL, PROCEDURAL AND FACTUAL BACKGROUND

### A. The Protection Act And Child Custody

2. The Protection Act is designed to provide protection to victims of domestic abuse. *See* §§ 40–13–3 and –5. Among other possible actions a court can take when a petition is filed under the Protection Act, the court may enter a temporary award of child custody. *See* § 40–13–5(A)(2). This custody order, however, is limited in duration and is not designed to be a substitute for other proceedings related to child custody. *See* § 40–13–5(C) (if another action relating to child custody is pending or has been completed, an initial order under the Protection Act may be entered, but the custody matter must then be transferred to the court having jurisdiction over the pending or prior action); § 40–13–6(B) (order under the Protection Act involving custody or support shall be effective for a fixed period of time not to exceed six months); *cf. In re Guardianship Petition of Lupe C.,* 112 N.M. 116, 120–22, 812 P.2d 365, 369–71 (Ct.App.1991) (Children's Code, which provides detailed statutory scheme concerning guardianship and custody of children, provides mechanism whereby a child can be removed from a parent's custody; Probate Code should not be used for that purpose). It is clear to us that the Protection Act is to be used only in emergency situations, at least as far as child custody matters are concerned and as a temporary remedy that is limited in scope.

### B. Facts And Procedure In This Appeal

3. Mother and Father were teenagers when the child was born in early January 1993. Their relationship was unstable and involved a number of physical altercations. On Super Bowl Sunday in January 1993, when the child was a few weeks old, Mother came to the house belonging to the child's paternal grandmother (Grandmother) to retrieve the child. A physical fight ensued, during which Mother allegedly snatched the child from Grandmother's arms. Almost ten months later, Father filed a petition under the Protection Act, alleging that an incident of domestic violence had occurred. The petition requested a temporary change of custody of the child. The request was based solely on the January incident. An ex parte order was issued depriving Mother of physical custody of the child pending a hearing on the petition, and the child was taken from Mother and turned over to Father.

4. Later, a hearing was held on the petition. Mother was not represented by a guardian ad litem or an attorney at that hearing. During the hearing, the district court expressed concern that Father was using the Protection Act to obtain a quick hearing in a custody matter. Nevertheless, in spite of that concern, the court then decided that, despite the passage of ten months from the date of the incident and the complete lack of any evidence that the child was in immediate physical or emotional danger due to domestic violence or abuse, the child's best interests required that physical custody be transferred from Mother to Grandmother and that legal custody be vested in Mother, Father, and Grandmother. The court accomplished this transfer of custody by invoking the court's powers as *parens patriae.* Mother was granted visitation rights under the court's order. The court expressly stated that the order was temporary and that either party could move to modify it after the Children, Youth, and Families Department (the Department) investigated the situation. Apparently, the matter was never referred to the Department for such an investigation. Mother did not appeal the district court's order. She did, however, successfully file a pro se motion a short time later to enforce the visitation terms of the order.

5. Some months after the Protection Act order was entered, Mother was sent to the Girls' School for two years for a juvenile offense that led to a delinquency determination. The child apparently continued to live with Grandmother. While Mother was still in custody, she filed a paternity action, claiming that Father might not be the biological father of the child. Mother also requested visitation rights in that proceeding. Mother was represented by counsel during the paternity and visitation proceedings. The district court dismissed the paternity action on the basis that a paternity determination made during the previous Protection Act proceedings, as part of the court's findings in that case, was res judicata on the issue. The court also denied Mother's request for visitation.

6. While the paternity and visitation action was pending, Grandmother (apparently in response to Mother's paternity petition) filed a petition to adopt the child in a separate proceeding. The adoption proceeding apparently was still pending at the time the briefs were filed in this case.

7. Five months after the paternity action was dismissed, in April 1996, Mother (represented by new counsel) filed a motion under Rule 1–060(B) to reopen both the Protection Act order and the later order dismissing the paternity action. Mother maintained that both orders were void. She premised the voidness of the paternity order solely on the fact that it was based on the previous Protection Act order, which she argues was also void. The district court denied Mother's Rule 1–060(B) motion, and this appeal followed.

## II. DISCUSSION

### A. Mother's Arguments

8. Mother's briefs have focused almost entirely on the merits of her constitutional claims. She maintains that the application of the Protection Act to this case was a violation of due process because there was no showing of imminent harm to the child before Mother was deprived of custody. Essentially, she also argues that the Children's Code, rather than the Protection Act, should have been applied in this case and that she should have received the protections provided in an abuse and neglect proceeding under the Children's Code, such as appointment of an attorney to represent her. Her constitutional arguments can therefore be summarized as claims that she was deprived of both procedural and substantive due process. Mother's briefs only very sparingly analyze the procedural posture of this case, other than to argue in conclusory fashion that the Protection Act order was void because it violated her right to due process and that the paternity order was in turn void because it was dependent on the previously void Protection Act order (in that it purported to give res judicata or claim preclusion effect to the Protection Act order). Under Rule 1–060(B)(4), which provides for reopening a void judgment, Mother argues that the orders in question must be vacated.

9. We agree with Mother that there are grave questions in this appeal concerning the manner in which the Protection Act was applied in this case. We have already noted that the district court expressed some concern about the process chosen by Father under the Protection Act. Even if a hearing is provided, as one eventually was in this case, we previously noted that the Protection Act is not to be used in lieu of a custody proceeding but is meant only as a temporary response to an emergency situation.

10. Finally, we also observe that Mother was a minor at the time of the Protection Act hearing and was not represented by a guardian ad litem or by counsel. This failure of representation, in our view, brings into question the validity of the Protection Act order. *See State ex rel. Children, Youth & Families Dep't v. Lilli L.*, 121 N.M. 376, 378–79, 911 P.2d 884, 886–87 (Ct.App.1995) (by rule, court must appoint a guardian ad litem or an attorney to represent a minor in a civil action, and failure to do so may constitute a violation of due process); *Nesbitt v. Nesbitt*, 1 Ariz.App. 293, 402 P.2d 228, 230 (1965) (where court otherwise has jurisdiction, a judgment rendered against an infant without a guardian ad litem may be erroneous, but is at most voidable, not absolutely void); *Schrum v. Bolding*, 260 Ark. 114, 539 S.W.2d 415, 417 (1976) (judgment rendered against infant without guardian ad litem is not void, but is irregular and reversible as voidable, in a proper proceeding); *Medical Legal Consulting Servs., Inc. v. Covarrubias*, 234 Cal. App.3d 80, 285 Cal.Rptr. 559, 563 (1991) (general rule in United States is that failure to appoint guardian ad litem for minor is not a jurisdictional defect; however, judgment obtained against infant, while not void, is voidable); *Newell v. Ayers*, 23 Wash.App. 767, 598 P.2d 3, 6 (1979) (if no guardian ad litem is appointed for minor, the judgment may be voidable by the minor). Due to the procedural peculiarities of this case, however, we need not decide the precise impact this aspect of the case would have on the validity of the Protection Act order.

## B. The Protection Act Order

11. Given the passage of time since the Protection Act order was entered, as well as Mother's failure to appeal the order, we must determine whether we can grant any meaningful relief to Mother at this time— that is, whether the issue concerning the validity of the Protection Act order is moot. *See In re Pernell*, 92 N.M. 490, 493, 590 P.2d 638, 641 (Ct.App.1979) (appellate courts ordinarily will not decide questions if no actual relief can be afforded).

12. The first and most glaring question concerning the Protection Act order is the fact that such orders expressly expire, by statute, six months after they are entered, unless the order is extended upon motion of the petitioner. *See* § 40–13–6(B). Mother filed no such motion in this case, and, in any event, the extension could not have been for more than another six months. *See id.* Mother has not shown us the utility of reopening an order that has already expired under clear statutory provisions. If the Protection Act order had anything to do with the current adoption proceedings, for example, so that eliminating the Protection Act order could somehow affect the pending adoption, there would be good reason to decide the merits of Mother's Rule 1–060(B) motion. Alternatively, if the authority for keeping the child in Grandmother's custody at this time depended on the validity of the Protection Act order, it would be incumbent upon us to decide the question to determine whether Mother could regain custody of the child.

13. We do not believe, however, that the Protection Act order has any legal impact on the adoption or upon the current custody situation. Instead, once the Protection Act order expired, the child remained in Grandmother's physical custody, not pursuant to that order, but only because Mother did not challenge the status quo, possibly as a result of her legal difficulties. There is no legal connection between the Protection Act proceedings and the adoption proceedings, even though there is the obvious factual connection—if Grandmother had not obtained physical custody through the Protection Act proceedings, later events may never have occurred, and Grandmother might not now be pursuing an adoption. In any event, it does not appear that reopening the expired

Protection Act order would afford Mother any actual relief. We therefore hold that the issue of whether the Protection Act order should have been declared void by the district court under Rule 1–060(B) is moot. *See Pernell*, 92 N.M. at 493, 590 P.2d at 641.

**C. Dismissal Of Paternity/Visitation Action**

■ 14. The· issue of whether the district court erred in refusing to reopen the dismissal ·of Mother's paternity action also raises questions of mootness. As we already noted, there is an adoption petition pending regarding the child. In Mother's original paternity action, as well as in her Rule 1–060(B) motion, she requested several forms of relief, including testing to determine paternity, appointment of a NMRA 1997, 11–706 expert, and a grant of visitation rights. The pendency of the adoption proceeding, however, renders much of this requested relief moot. The adoption proceeding itself, by its very nature, will decide what type of permanent custody arrangement is best for the child, and it is the court in that proceeding that should appoint a Rule 11–706 expert if one is necessary. Similarly, the question of whether visitation rights should be granted pending the adoption is one that is integrally related to the decision to grant or deny the petition for adoption, and the court addressing the adoption matter is the proper entity to decide the visitation question. *Cf.* NMSA 1978, § 32A–5–29 (Repl.Pamp.1995) (petitioner in adoption case has physical custody and control of the would-be adoptee while the petition is pending, as long as the adoptee has been placed with the petitioner pursuant to the adoption statute). The ends of judicial economy will not be served if parallel proceedings are allowed to exist, with both proceedings addressing visitation and questions concerning the best interests of the child.

15. We can conceive of only one way in which Mother could gain some measure of actual relief if she were to be successful in reopening the paternity action, and that is that the issue of paternity has some bearing on the proper procedures to follow in the adoption case. Under the adoption statute, a potential adoptee must be placed in the adop-

tive home by the Department, an agency of another state, any agency, or pursuant to a court order, *unless* the adoptee is being adopted by a relative within the fifth degree of consanguinity and has lived with that relative for at least one year. NMSA 1978, § 32A–5–12(C) (Repl.Pamp.1995).

16. We assume, but do not decide, that Grandmother relied on the consanguinity exception initiating the adoption proceeding and that a placement· order was thus not obtained from the court. If Mother were to be successful in reopening the paternity action, which in turn resulted in a ruling that Grandmother was not a blood relative, she would have to follow the procedures set out in NMSA 1978, Section 32A–5–13 (Repl. Pamp.1995), and obtain a court order placing the child with her before the adoption could be granted. 'It thus appears that Mother could possibly gain some benefit from vacation of the paternity order in the form of added procedural protections in the adoption case. Although this benefit is somewhat tangential, we will give Mother the benefit of the doubt on that point and hold that the paternity order question is not entirely moot.

17. In summary, we pose the mootness questions as follows: (1) the Protection Act order itself has expired, and no relief can be granted in that particular proceeding, so that voidness question is moot; (2) the paternity question is probably not moot, although the relief that should be granted if the order is vacated should not be the relief requested by Mother; (3) consequently, it is necessary to examine the question of voidness concerning the paternity order.

**D. Voidness Of Paternity Dismissal Order**

■ 18. Voidness is an issue in this appeal because Mother instituted the proceedings underlying this appeal pursuant to Rule 1–060(B)(4), specifically claiming that the Protection Act and paternity orders should be reopened because they were both void. In turn, Mother's only argument concerning the validity of the paternity order is that the order was based on and related to the Protection Act order, and since the latter was void, so was the former. As we explain

below, however, the paternity order was not based on the Protection Act order in any legal sense, except for the fact that the paternity order may be deemed to have given collateral-estoppel or issue-preclusion effect to the Protection Act order. Consequently, the crucial question in this appeal is whether a judgment that gives preclusive effect to a portion of an order that is later declared void (we are assuming, for the sake of argument, that the Protection Act order was void) is itself void.

■ 19. We note that the district court's order relied on res judicata (claim preclusion), rather than issue preclusion or collateral estoppel, in dismissing the paternity action. However, since the Protection Act petition was a different cause of action than the paternity proceeding, issue preclusion is the correct principle to be applied in this case. *See Ford v. New Mexico Dep't of Pub. Safety,* 119 N.M. 405, 407, 891 P.2d 546, 548 (Ct.App.1994) (claim preclusion prevents a party from bringing the same cause of action against the same person, while issue preclusion prevents re-litigation of issues actually and necessarily decided in a prior case), *cert. denied,* 119 N.M. 354, 890 P.2d 807 (1995).

20. Because Mother's arguments depend on whether the Protection Act order was void or not, one way to decide the paternity order issue would be to address the question of voidness concerning the Protection Act order. As our discussion will demonstrate, however, the paternity order was not void, but merely erroneous at most, even if we assume the Protection Act order was void. Thus, for purposes of this opinion, we will not decide whether the Protection Act order was void. We will assume instead that it was void and then address the effect of that voidness on the paternity order, if any.

21. In support of her argument that the paternity order was void because it was based on the Protection Act order and related to it, Mother relies on *State ex rel. Department of Human Services v. Perlman,* 96 N.M. 779, 635 P.2d 588 (Ct.App.1981). *Perlman,* however, stated only that, where a neglect order entered in violation of due process is the only basis for a later termination

of parental rights, the termination is erroneous and must be reversed on appeal. *Id.* at 782, 635 P.2d at 591. *Perlman* did not hold that the termination order was void and thus subject to reopening years later if no appeal had been taken. In *Perlman,* the mother was not represented by counsel during the original abuse and neglect proceedings and signed a neglect decree without the benefit of counsel. *Id.* at 781–82, 635 P.2d at 590–91. Two and one-half years later, the Department of Human Services applied for a termination of parental rights, based solely on that neglect decree. *Id.* at 780, 635 P.2d at 589. By this time, the mother was represented by counsel. Over counsel's objections, the mother's parental rights were terminated. *Id.* at 781, 635 P.2d at 590. On *direct appeal,* this Court reversed the district court, holding that the *original neglect decree* was void. *Id.* at 782, 635 P.2d at 591. We noted that the petition to terminate was grounded only on the fact that the child had been adjudicated as neglected and that the Department of Human Services claimed the termination request was ancillary to the neglect proceeding. *Id.*

22. We distinguish *Perlman* in several ways. First, as we already noted, *Perlman* did not hold that the subsequent termination order, as opposed to the original neglect order, was void. *Perlman* thus does not assist us in determining whether the paternity order in this case (which gave preclusive effect to the finding of paternity in the Protection Act order, although arguably erroneously in doing so) was void or merely erroneous. Second, there are important differences between the circumstances in *Perlman* and the facts of this appeal. The termination proceedings in *Perlman* were ancillary to the neglect proceedings and essentially incorporated those proceedings as well as the void neglect decree—the termination proceedings were the culmination of one process that began with the abuse-and-neglect case. In this appeal, on the other hand, the Protection Act proceedings were discrete and clearly separate from the later paternity proceedings. We therefore cannot conclude that the voidness of the Protection Act order flowed

directly to the paternity order, as was the case in *Perlman*.

■ 23. Because *Perlman* is not controlling in this case, we thus apply the usual principles used in New Mexico to determine whether a judgment is void and subject to reopening under Rule 1–060(B)(4). Ordinarily, when a court has jurisdiction over the subject matter and over the parties, it is not the usual case that a decision made by that court will be void rather than simply erroneous. *See, e.g., In re Adoption of Webber*, 116 N.M. 47, 50, 859 P.2d 1074, 1077 (Ct.App. 1993) (jurisdiction of district court depends on whether court had power to hear the matter submitted to it, not on the validity of the court's decision); *Deerman v. Board of County Comm'rs of County of Dona Ana*, 116 N.M. 501, 508, 864 P.2d 317, 324 (Ct.App. 1993) (judgment was not void for purposes of Rule 1–060(B) because court had jurisdiction to hear the matter).

24. In *Sundance Mechanical & Utility Corp. v. Atlas*, 109 N.M. 683, 686–87, 789 P.2d 1250, 1253–54 (1990), our Supreme Court held that there are three essentials necessary to the validity of a judgment: jurisdiction over the parties, jurisdiction over the subject matter, and power or authority to decide the particular matter presented. *Sundance* also stated that there was no difference between lack of subject-matter jurisdiction and "lack of power or authority to decide the particular matter presented." *Id.* at 686, 789 P.2d at 1253. According to *Sundance*, therefore, it appears that a judgment would not be deemed void if the court rendering it had personal and subject-matter jurisdiction. It is clear in this appeal that the district court had jurisdiction over both the parties and the subject matter in the paternity action.

25. Assuming, as we do for purposes of this opinion, that the Protection Act order was void, it is possible that the district court erred in giving preclusive effect to the paternity determination made in that case (although we need not decide that question). That possible error, however, was an error concerning the merits of the court's decision, not its power to hear and decide the case. For that reason, the judgment dismissing the paternity action was not void but at most merely erroneous, and the district court thus did not err in refusing to reopen the judgment under Rule 1–060(B)(4). *See Webber*, 116 N.M. at 50, 859 P.2d at 1077 (no error in failing to reopen adoption decree under Rule 1–060(B)(4), even though decree may have been erroneously granted because statutory requirements for adoption had not been met).

■ 26. Although Mother has not argued this point, we note that under federal case law the definition of a void judgment is broader than is apparently the case in New Mexico. Some federal cases recognize a doctrine we will denote, for purposes of our discussion, the plain-usurpation-of-power doctrine. These cases appear to hold that, if a court's decision is plainly contrary to a statute or the constitution, the court will be held to have acted without power or jurisdiction, making the judgment void for Rule 1–060(B) purposes, even if the court had personal and subject-matter jurisdiction. *See, e.g., United States v. Indoor Cultivation Equip.*, 55 F.3d 1311, 1317 (7th Cir.1995) (forfeiture statute required that complaint be filed within sixty days of certain action; failure to meet that deadline meant that court had no power to order forfeiture, and its order was void); *Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir.1985) (after judgment awarded, defendant paid, then found out this was action in admiralty that should have been brought solely against United States; court held that judgment was void); *Compton v. Alton S.S. Co.*, 608 F.2d 96, 104 (4th Cir.1979) (judgment by default awarded penalty wages under inapplicable statute; court held that judgment was void, not just erroneous); *see also V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224–25 (10th Cir.1979) (noting that judgment can be void if court's action involves a "plain usurpation of power"); *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir.1963) (court had no power to impose unconstitutional prior restraint on publication of true statements, so thirty-year-old consent judgment was void).

27. New Mexico has not adopted the plain-usurpation-of-power doctrine. In fact, our Supreme Court appears to have impliedly rejected it in *Sundance* by equating

"lack of power or authority to decide the particular matter" with subject-matter jurisdiction. 109 N.M. at 686, 789 P.2d at 1253. Our discussion of federal case law is therefore not necessary to our decision. Even if we were to apply this doctrine, however, we still would not hold that the paternity order was void. That order gave issue-preclusion effect to a paternity determination that was not contested by Mother, even though she did contest other portions of the Protection Act petition. The paternity finding was consistent with the parties' practice and acknowledgment over the eleven months preceding the Protection Act hearing. The evidence supporting the court's paternity determination at the Protection Act hearing was as follows: Grandmother testified at the Protection Act hearing that she was the child's grandmother and that the child had spent almost every weekend with her and with Father, even after the Super Bowl weekend, up until the filing of the Protection Act petition. Father testified generally to the same effect.

28. Mother was given an opportunity to testify, and never mentioned a possibility that Father might not be the child's birth father. The district court's factual determination that Mother and Father were the natural parents of the child was therefore supported by the evidence and uncontested by Mother. Given that situation, there would be no usurpation of power or act exceeding the district court's authority when the court later gave that finding collateral estoppel effect, even if the order issued under the Protection Act might have been void.

29. In this connection, we should note that Mother was represented by counsel in the paternity proceedings (different counsel than her current attorney) and could have appealed the court's decision at that time. She had an opportunity to litigate the preclusion question and raise the issue of the validity of the Protection Act order; she also had an opportunity to appeal the district court's decision, but chose not to do so; and the finding that was given collateral estoppel effect was supported by the evidence and acquiesced by all parties. Mother may have been deprived of due process in the Protec-

tion Act proceedings, and the district court's ultimate decision in that case may have been unconstitutional or at least beyond the scope of the statute. Be that is it may, however, Mother was not deprived of due process during the later paternity proceedings and the district court's decision in that proceeding was based not on a misapplication of the Protection Act but on a finding supported in the prior proceeding by substantial evidence and Mother's own actions. As a result, even if we were to apply the more liberal federal standard, we would also rule that the paternity order was not void and that Mother's remedy was by way of appeal rather than pursuant to a Rule 1–060(B)(4) motion based on voidness.

## III. CONCLUSION

30. In summary, because the Protection Act order had expired and no longer had any effect, the district court could properly conclude that reopening that order would not afford Mother any actual relief. Consequently, we have not addressed the constitutional issues raised by Mother concerning the Protection Act and its application by the district court. Additionally, the visitation and appointment-of-expert issues, even if the paternity case were reopened, are matters more properly decided as part of the pending adoption proceedings. As a result, only quite limited relief could be granted in this case even if we held the district court's dismissal of the paternity case to be void. For the reasons stated above, however, even assuming that the Protection Act order was void, the later paternity decision was at most erroneous and not void and was not subject to reopening under Rule 1–060(B)(4). We therefore affirm the district court's denial of Mother's Rule 1–060(B) motion.

31. IT IS SO ORDERED.

DONNELLY and BOSSON, JJ., concur.