**In re the Matter of Nelda BOYER.**

**No. 16853.**

Supreme Court of Utah.

Oct. 2, 1981.

Paul Gotay, Ogden, for appellant.

James D. Vilos, Ogden, David L. Wilkinson, and Sharon Peacock, Salt Lake City, amicus curiae for State.

STEWART, Justice:

This appeal is from a district court order appointing a guardian for the appellant, Nelda Boyer. The appointment was based on a jury finding that appellant is an "incapacitated person" in need of a personal guardian to provide her with care and supervision. Appellant contends that the order should be set aside because the standard for determining competency in a guardianship proceeding under Utah Code Ann. (1953), § 75–1–201(1)[1] is unconstitutionally vague and overbroad.

Appellant is a 39-year-old woman who has a mild degree of mental retardation and is a slow learner. She made her home for many years in Reno, Nevada, with her parents. Following her father's death five years ago, she lived with her mother. Turmoil in the home situation led to visits with

---

1. All references are to Utah Code Ann. (1953), as amended.

a family therapist who recommended she be separated from her mother. The family suggested bringing Nelda Boyer to Ogden, Utah, where other members of her family reside. The therapist recommended that she be placed in Jefferson Manor, a nursing home in Ogden, and that a guardian be appointed. Appellant's relatives invited her to Utah and then arranged for her to live at Jefferson Manor.

Her family initiated guardianship proceedings.[2] Appellant requested a jury trial pursuant to § 75–5–303 on the issue of her incompetency. She retained an attorney who presented and cross examined witnesses at the hearing. The jury instructions stated in part:

> "Incapacitated person" means any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, or other cause to the extent that he/she lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his or her person.
>
> \* \* \* \* \* \*
>
> Mentally retarded citizens are presumed legally competent to manage their personal and financial affairs.

The case was submitted to the jury on special interrogatories, and it found "by a preponderance of the evidence that [appellant] is an 'incapacitated person' . . . and that the appointment of a guardian is necessary or desirable as a means of providing continuing care and supervision of [appellant]." Her sister, Naoma Suzie B. Rice, was appointed guardian by order of the court.[3] The Letters of Guardianship set no limits to the powers of the guardian.

Appellant attacks the constitutionality of two sections of the probate code dealing with the appointment of guardians for incapacitated persons. Section 75–1–201(18) defines "incapacitated persons" as:

> . . . any person *who is impaired* by reason of mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, or other cause (except minority) *to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person.* [Emphasis added.]

Section 75–5–304 authorizes appointment of a guardian by the court and provides in part:

> The court may appoint a guardian as requested if it is satisfied that the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as a means of providing continuing care and supervision of the person of the incapacitated person. . . . Alternatively, the court may dismiss the proceeding or enter any other appropriate order.

Appellant contends that because a determination of incapacity may result in a deprivation of such fundamental rights as the right of privacy, the right to travel, and the right to make various personal decisions, the statutory provisions must meet due process requirements and contain well-defined standards. The argument is that the term "responsible decisions concerning his person," as used in § 75–1–201(18), is unconstitutionally vague and overbroad and that, because of the potential infringement of individual liberties, the statutory scheme is deficient in not incorporating the principle of the "least restrictive alternative." Finally, appellant argues that due process is violated because a finding of incompetency may be based on a preponderance of the evidence rather than clear and convincing proof.

When state action impinges on fundamental rights, due process requires standards which clearly define the scope of permissible conduct so as to avoid unwar-

---

2. The family originally sought the appointment of Jerry Kershaw, the operator of Jefferson Manor; an amended petition named Naoma Suzie B. Rice, a sister of appellant, as the proposed guardian.

3. Appointment of a conservator for the estate of appellant was not sought. See §§ 75–5–401 through 75–5–433.

ranted intrusion on those rights. A statute which affects fundamental liberties is unconstitutional if it is so vague that "men of common intelligence must necessarily guess at its meaning . . ." *State v. Packard*, 122 Utah 369, 374, 250 P.2d 561, 563 (1952), quoting from *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). See also *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 2d 431, 446 P.2d 958 (1968); *State v. Musser*, 118 Utah 537, 223 P.2d 193 (1950).

A ward in a guardianship case, however, may not be of ordinary intelligence, or even conscious. Nevertheless, intelligible standards must guide both the determination of incompetency and the powers which a guardian may exercise over the ward. Necessarily, there must also be sufficient flexibility to deal with the infinite variety of problems presented in guardianship cases, and yet sufficient limitations on the discretion of both courts and guardians to insure that the legitimate purposes of the statute will be effectuated without unjustifiable intrusion upon personal liberties. The United States Supreme Court has stated:

> It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. [*Giaccio v. Pennsylvania*, 382 U.S. 399, 401, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966).]

See also *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

 Of course, "the Constitution does not require impossible standards"; all that is required is that the language convey "sufficiently definite" standards. *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1541–42, 91 L.Ed. 1877 (1947). Although vagueness is particularly repugnant if the statute could be construed to permit

illegal interference with individual liberties, facial imprecision in statutory terms is not necessarily a reason to hold a statute unconstitutional, *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). It is the duty of this Court to construe a statute to avoid constitutional infirmities whenever possible. Cf. *Munsee v. Munsee*, 12 Utah 2d 83, 363 P.2d 71 (1961).

The statutory definition of an "incapacitated person" focuses on a person's "capacity to make or communicate *responsible decisions concerning his person.*" Utah Code Ann. § 75–1–201(18). [Emphasis added.] The breadth and imprecision of that standard permit the determination of incompetency to be based on factors subjective to the trier of fact and factors extraneous to the legitimate interests of the state and the ward. That standard, standing alone, would allow a guardian to be appointed for a person who makes decisions regarded by some as irresponsible, even though he has sufficient capacity to make personal management decisions which allow him to function in a manner acceptable to himself and without any threat of injury to himself.

One difficulty with the statutory term "responsible decisions" was pointed out by the United States District Court for the District of Utah in a decision holding portions of Utah's involuntary commitment statute (§ 64–7–36)[4] unconstitutionally vague and overbroad. In *Colyar v. Third Judicial District Court*, 469 F.Supp. 424, 433 (D.Utah 1979), the Court stated:

> The use of the word "responsible" focuses the committing authority's attention on the *content* of the decision rather than on the ability of the individual to engage in a rational decision-making *process.* The word "responsible," being given no further content, lends itself to a completely subjective and, therefore, potentially arbitrary and nonuniform, evaluation of *what* is decided rather than an objective evaluation of the *method* by which the decision is reached. [Emphasis in original.]

---

4. This section was later amended to meet constitutional requirements. The amended section is found in the 1979 pocket supplement to Volume 7A of the Utah Code Annotated.

Prior decisions of this Court have also recognized the importance of examining the decision-making process of an alleged incompetent. In *In re Heath*, 102 Utah 1, 61, 126 P.2d 1058, 1061 (1942), the Court, in dealing with the prior incompetency statute having a different standard, stated:

> The section [dealing with incompetency] implies physical or mental defects which interfere with the rational functioning of the mind. If the mind functions rationally but the individual acts in a way commonly designated as eccentric—that is, his acts deviate from the usual principally because he is less susceptible to public opinion than are many of us—he is not incompetent .... He may be foolish in the eyes of many of us, but he is not incompetent. Competency is not measured by one's ability to accumulate and hold the material things of life. Were it so, there would be many of our ministerial brethern—not to mention some of our learned judicial associates—behind mental bars.

See also *In re Valentine's Guardianship*, 4 Utah 2d 355, 362–63, 294 P.2d 696, 701–02 (1956).

It is also necessary, however, to recognize that the content of an *individual's* decisions must also on occasion be evaluated, apart from the underlying rationality of the decision-making process. Unusually bad judgment, highly impaired memory, or a severe loss of behavior control may call in question a person's competency. Indeed, psychotic individuals may reason correctly from a premise demonstrably at variance with reality. That the conclusion may follow in a logical sequence from the premise is not necessarily sufficient to compel the conclusion that a person has made a "responsible decision."

Nevertheless, the term "responsible decisions" admits of such a broad interpretation as to raise a serious question of unconstitutional vagueness. But the term may also be construed more narrowly so as to effectuate the statutory purpose and avoid constitutional difficulty, and it is our "duty to adopt that construction which will save the statute from constitutional infirmity." *United States v. Delaware and Hudson Company*, 213 U.S. 366, 407, 29 S.Ct. 527, 535, 53 L.Ed. 836 (1909).

The term "responsible decisions" is reasonably susceptible of a construction giving effect to the statute's basic purpose without improperly impinging on an individual's liberties of self-determination, right of privacy, right to travel, or right to make one's own educational and medical decisions. The basic State interest is in preventing an incapacitated person from causing harm to himself. The State has no interest in restricting harmless, unorthodox conduct; indeed, it must be remembered that much human progress has resulted from individuals who marched to their own tune and strayed outside usual customs and conventions. The benign purposes of the statute can be effectively accomplished without improperly trenching on those liberties by defining "responsible decisions" in terms of specific, objective standards for determining the ability of one to care for oneself.

■ We hold that under § 75–1–201(18) a determination that an adult cannot make "responsible decisions concerning his person" and is therefore incompetent, may be made only if the putative ward's decision-making process is so impaired that he is unable to care for his personal safety or unable to attend to and provide for such necessities as food, shelter, clothing, and medical care, without which physical injury or illness may occur.[5] See *Fazio v. Fazio*, 375 Mass. 394, 378 N.E.2d 951 (1978).

\* \* \*

5. The Model Guardianship and Conservatorship Act prepared by the American Bar Association's Commission on the Mentally Disabled focuses attention on the ability to make decisions and the possibility of physical injury to the allegedly disabled person. Section 3 of the Act states in part:

As used in this act:

(2) "Disabled persons" means adults whose ability to receive and evaluate information effectively and/or to communicate decisions is impaired to such an extent that they lack the capacity to manage their financial resources and/or to meet essential requirements for their physical health or safety

In addition to the issue of the constitutionality of the standard for determining incompetency, the appellant argues that the statutory provision specifying the powers of the guardian is unconstitutionally overbroad because the full scope of powers which may be, and in this case were, conferred on a guardian are not necessary in specific cases. In this case the least restrictive alternative, is closely allied with the more general overbreadth issue,[6] and, therefore, we address both together. Appellant specifically contends that the State must adopt the alternative least restrictive of the alleged incompetent's liberty and that the Utah procedure sweeps too broadly in permitting a guardian to be invested with wide-ranging powers over the personal decision of one who has no need of complete supervision, although there may be a need for assistance in handling specific aspects of his or her personal affairs.

█ A legitimate state purpose cannot be accomplished by means that broadly "stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). See also *Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Covington v. Harris*, 419 F.2d 617 (D.C.Cir. 1969). The means adopted must be narrowly tailored to achieve the basic statutory purpose.

The least restrictive alternative standard has been applied in involuntary commitment proceedings. In *Welsch v. Likins*, 373 F.Supp. 487, 502 (D.Minn.1974), the Court required state officials to make "good faith attempts to place [involuntarily committed] persons in settings that will be suitable and appropriate to their mental and physical conditions while least restrictive of their liberties." See also *Rennie v. Klein*, 462 F.Supp. 1131 (D.N.J.1978); *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974). Cf. *Appeal of Niccoli*, 472 Pa. 389, 372 A.2d 749 (1977); *State v. Krol*, 68 N.J. 236, 344 A.2d 289 (1975). Compare *Lessard v. Schmidt*, 349 F.Supp. 1078 (E.D.Wis.1972) (three judge court), *vacated and remanded on other grounds*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974).

█ Although the restrictions on, and deprivation of, personal freedom by appointment of a guardian are less in extent and in intrusiveness than by involuntary commitment, nevertheless, the loss of freedom may be substantial. Accordingly, a court in appointing a guardian must consider the interest of the ward in retaining as broad a power of self-determination as is

---

even with court-ordered assistance or the appointment of a limited personal guardian or limited conservator.

\* \* \*

(4) "Meet essential requirements for physical health or safety" means those actions necessary to provide the health care, food, shelter, clothing, personal hygiene and other care without which serious physical injury or illness is more likely than not to occur. [Reprinted at 3 Mental Dis.L.Rep. 264, 266–67 (1979).]

Utah's Involuntary Commitment Statute permits commitment if the court finds beyond a reasonable doubt that "[b]ecause of the patient's illness the proposed patient poses an immediate danger of physical injury to others or self, which may include the inability to provide the basic necessities of life, such as food, clothing, and shelter, if allowed to remain at liberty; and . . . [t]he patient lacks the ability to engage in a rational decision-making process regarding the acceptance of medical treatment

as demonstrated by evidence of inability to weigh the possible costs and benefits of treatment . . . ." Section 64–7–36(10)(b) and (c).

6. In *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972), the Court stated: "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." [Footnote omitted.] In *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960), the court stated:

In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose. [Footnotes omitted.]

consistent with the reason for appointing a guardian of the person.[7]

The nature and extent of the powers to be conferred on a guardian is for the court to decide. Section 75–5–312(1) provides: "A guardian of an incapacitated person has the same powers, rights, and duties respecting his ward that a parent has respecting his unemancipated minor child ... except as modified by order of the court ..." Although the powers conferred upon a guardian may be very broad, the court is authorized to tailor the powers of a guardian to the specific needs of the ward. In appointing a guardian, the court should state with particularity the powers granted, unless the full scope of the statutory authorization is warranted. The process should be individualized and based upon careful consideration of the particular need for supervision. Cf. *In re Roe*, —— Mass. ——, 421 N.E.2d 40 (1981).

To enable the court to fashion an appropriate remedy, the parties should submit evidence "... showing the proposed ward's inability to think or act for himself as to matters concerning his personal health, safety, and general welfare ..." *Fazio v. Fazio*, 375 Mass. 394, 403, 378 N.E.2d 951 (1978). Based on this evidence, findings of fact should be made to support the powers conferred on the guardian, and those powers should be as clearly defined as the circumstances permit. So construed, the guardianship statute is not unconstitutionally overbroad.

The final issue raised by appellant is the standard of proof necessary before a determination of incompetency can be made. The guardianship statute does not deal with the problem. A determination of what standard should govern rests on a weighing of the State's interest and purpose in having a guardian appointed, the interest of the individual for whom a guardian is sought, and the consequences of an erroneous judgment and potential abuse, either wittingly or unwittingly, by third persons.

See generally, Note, "*We're Only Trying to Help": The Burden and Standard of Proof in Short Term Civil Commitment*, 31 Stanford L.Rev. 425 (1979). The individual interests at stake include loss of personal liberty, stigma, unwanted medical treatment, legal disabilities, and possible imposition by designing individuals. The State's interest is in protecting the individual from injury to himself.

In balancing these competing interests, we conclude that the reasonable doubt standard in the determination of competency is too restrictive and would tend to frustrate the beneficial purposes of the act by making a guardian unavailable to persons needing only a limited degree of supervision. Furthermore, there are other procedures provided which tend to reduce error. The flexibility available to a judge in tailoring a specific remedy to a specific individual, as authorized by the statute, lessens the potential for an overly broad deprivation of personal decision-making power. In addition, the trial court's findings will sharpen the effectiveness of appellate review.

On the other hand, a preponderance-of-the-evidence standard would provide inadequate protection to an individual's interests. In every case, civil and criminal, courts endeavor to arrive at a conclusion that accurately reflects the facts. Nevertheless, a preponderance of the evidence test allows for considerable doubt in the fact finder's mind as to the correctness of the judgment—a latitude necessary, for numerous reasons, in most civil cases, not the least of which is the necessity to resolve and conclude disputes. See generally *In re Winship*, 397 U.S. 358, 371, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring).

■ However, an erroneous judgment is of greater concern when an individual's liberty is at stake, regardless of the nature of the proceeding, and it is therefore necessary to minimize error in guardianship cases to the extent possible without undermining or

---

7. The standards governing the appointment of a conservator of a person's property are set forth in § 75–5–401.

**1092**

frustrating the important purposes served by the guardianship statutes. In the absence of a legislative directive on the issue, we think those interests are best accommodated by requiring evidence of incompetency by clear and convincing evidence.[8] A number of courts have imposed that standard in involuntary commitment cases. *Stamus v. Leonhardt*, 414 F.Supp. 439 (S.D. Iowa 1976); *Doremus v. Farrell*, 407 F.Supp. 509 (D.Neb.1975); *In re Stephenson*, 67 Ill.2d 544, 10 Ill.Dec. 507, 367 N.E.2d 1273 (1977); *In re Valdez*, 88 N.M. 338, 540 P.2d 818 (1975). We recognize that the deprivation of personal freedoms is greater in commitment cases than in guardianship cases and that, in the latter cases, there are differences in the extent of curtailment of personal freedoms. Nevertheless, the interests at stake are not so different as to require that a different standard should govern.

The judgment of incompetency is set aside and the case remanded for further proceedings. No costs.

HALL, C. J., and BRIAN H. CROFT, District Judge, concur.

MAUGHAN, J., did not participate herein; CROFT, District Judge, sat.

CROCKETT, J., heard the arguments but retired before the opinion was filed.

WILKINS, J., heard the arguments but resigned before the opinion was filed.

---

8. *The President's Commission on Mental Health, Mental Health and Human Rights*, Ariz. L.Rev. 20:49–174, 176, 1978, recommended what it thought due process required in guardianship proceedings. In part, it recommended:

 4. *Guardianship*
 Recommendation 1.
 (a) State guardianship laws should be revised to provide: (1) increased procedural protections including, but not limited to, written and oral notice, the right to be present at proceedings, appointment of counsel and a clear and convincing evidence standard as the burden of proof; a comprehensive evaluation of functional abilities conducted by trained personnel; and a judicial hearing which employs those procedural standards used in civil actions in the courts of general jurisdiction of any given State; (2) a definition of incompetency which is understandable, specific and relates to functional abilities of people; (3) the exercise of guardians' powers within the constraints of the right to least restrictive setting, with no change made in a person's physical environment without a very specific showing of need to remove a person to a more restrictive setting; and (4) a system of limited guardianships in which rights are removed and supervision provided only for those activities in which the person has demonstrated an incapacity to act independently.

 (b) Public guardianship statutes should be reviewed for their effect in providing services to persons in need of but without guardianship.