IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2017 Session

## IN RE CONSERVATORSHIP OF OTTO TILLMAN STIEFEL

Appeal from the Probate Court for Shelby County
No. PR-6516      Kathleen N. Gomes, Judge
_____

### No. W2016-02598-COA-R3-CV
_____

This is a conservatorship dispute. The trial court found that there was clear and convincing evidence that Appellant was in need of a conservator. We conclude that the evidence presented at trial was not clear and convincing as to whether Appellant was in need of a conservator. Because there is some question in the record, however, as to whether the parties reached an agreement to allow the appointment of a conservator, we vacate and remand this case to determine this issue. Reversed in part, vacated in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Reversed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Donald Capparella and Elizabeth Sitgraves, Nashville, Tennessee, for the appellant, Otto T. Stiefel.

Chasity Sharp Grice, Memphis, Tennessee, for the appellee, Cyle Woodhouse.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# FACTS

This case arises from a conservatorship dispute between Appellee/Petitioner Cyle Woodhouse and his step-grandfather Appellant/Respondent Otto T. Stiefel.[2] On July 18, 2016, Mr. Woodhouse filed a petition for the appointment of permanent conservator over his step-grandfather. The petition alleged that Mr. Stiefel had been diagnosed with Alzeimer's and dementia but refused to be further examined. Although Mr. Stiefel was in good physical condition, the petition alleged that due to his diminishing mental capacity he could not manage his affairs. Mr. Woodhouse further requested that either The Aging Commission or another third party be appointed as conservator of Mr. Stiefel's estate. On the same day, Mr. Woodhouse filed an accompanying motion to order medical and psychological examination of Mr. Stiefel pursuant to Tennessee Code Annotated section 34-3-105(b).[3] Mr. Woodhouse suggested that the court appoint Dr. Robert Burns for the examination, as he was a well-known geriatric specialist.

Just two days later, on July 20, 2016, Mr. Woodhouse filed his first amended complaint for the appointment of conservator of person and estate. In addition to the facts asserted in the original complaint, the amended complaint (1) identified Dr. William Stewart Jr. as Mr. Stiefel's treating physician, (2) requested that Dr. Stewart perform an examination of Mr. Stiefel, and (3) asked that Mr. Stiefel be moved to Quail Ridge Alzheimer's Special Care Center, a skilled nursing home, where Mr. Stiefel's wife resided.

On August 11, 2016, an attorney filed a notice of appearance on behalf of Mr. Stiefel.[4] On August 12, 2016, Mr. Stiefel filed (1) answers to the petition and amended petition for conservatorship; (2) an affidavit of Mr. Stiefel's son, Otto P. Stiefel ("Son"); and (3) motions to dismiss both the petition and the motion to order a medical examination. In his answer, Mr. Stiefel denied all allegations relating to his alleged need for a conservator, denied that Dr. Stewart was his treating physician, and claimed that Mr. Woodhouse only wanted control of his finances to help Mrs. Diana Stiefel. Son's

---

[2] Mr. Woodhouse is the grandson of Diana Stiefel, Mr. Stiefel's wife. Mr. Woodhouse is currently conservator for his grandmother. At the time of the lawsuit, Mrs. Stiefel was residing in a skilled nursing center for the elderly with Alzheimer's disease.

[3] Section 34-3-105(b) provides, in relevant part:

> On motion by the petitioner, the respondent, the adversary counsel, the guardian ad litem, or on its own initiative, the court may order the respondent to submit to examination by such physicians, psychologists, senior psychological examiners or other specialists who have expertise in the specific disability of the respondent. The examiner shall send a sworn written report to the court with copies to the petitioner, the guardian ad litem and the person requesting the second examination.

[4] Mr. Stiefel is represented by different counsel in this appeal.

affidavit further disputed Mr. Woodhouse's allegations that Mr. Stiefel was in need of a conservator and also alleged that Mr. Woodhouse's true motive was to gain control of his assets for the benefit of Mrs. Stiefel. In the motions to dismiss, Mr. Stiefel argued that because Son, had a durable power of attorney and also lived with Mr. Stiefel, there was no need for a court-appointed conservator.

The trial court appointed a guardian ad litem for Mr. Stiefel on August 15, 2016, pursuant to Tennessee Code Annotated section 34-1-107. The court also held a hearing this day. At this hearing, the trial judge orally granted a thirty day continuance for Mr. Stiefel to undergo a physician's examination. A written order, however, was not entered by the trial court until September 23, 2016.

Mr. Stiefel subsequently renewed his motion to dismiss on September 7, 2016, accompanying his motion with the sworn Psychologist's Report of Dr. Allen Battle, Jr. In the report, Dr. Battle opined that Mr. Stiefel was completely competent to manage his personal, medical, and financial affairs in a wise manner and did not need a conservator. On September 12, 2016, in response to Dr. Battle's Report, Mr. Woodhouse filed a motion to order an independent medical examination requesting that (1) Dr. Burns perform the examination and (2) Mr. Stiefel file Dr. Burns's Report. In this motion he also objected to Dr. Battle's affidavit on the basis that Dr. Battle is not an expert in geriatrics and, thus, not qualified to render a professional opinion regarding Mr. Stiefel. The trial court held another hearing on September 15, 2016. At this hearing, the trial judge made several comments regarding Mr. Stiefel's testimony and mental state at a previous, unrelated hearing, to which Mr. Stiefel's counsel objected. The trial judge then orally denied Mr. Stiefel's motion to dismiss and ordered an independent medical examination of Mr. Stiefel with Dr. Burns with a report to be filed by November 3, 2016, which ruling was memorialized by a written order entered on September 23, 2016. On the same day, the trial court entered a written order appointing an attorney ad litem for Mr. Stiefel.

Following the September 15 hearing, Mr. Stiefel submitted another Sworn Medical Examination, this time performed and recorded by Dr. Randy Villanueva. Dr. Villanueva's report stated that the focus of his medical practice consisted of geriatrics and memory care. It further stated that he was Mr. Stiefel's treating physician since April 1, 2016, and that Mr. Stiefel had been diagnosed with mild dementia but is competent to make his medical and financial decisions. Dr. Villanueva also attached the results of Mr. Stiefel's Mini-Mental State Examination ("MMSE") to his report, in which Mr. Stiefel scored twenty-nine out of thirty.[5]

---

[5] In the MMSE, the highest score one can attain is a thirty. Thus, Mr. Stiefel missed only one point in this particular examination.

On November 16, 2016, Mr. Stiefel's counsel filed Dr. Robert Burns's Sworn Medical Report and an amended answer. In his report, Dr. Burns stated that Mr. Stiefel was in need of a conservator to manage his person and affairs and that his disability is permanent with no hope of improvement. The amended answer claimed that (1) Mr. Stiefel does suffer from dementia, but can still manage his own personal and financial affairs; (2) Dr. Randy Villanueva is Mr. Stiefel's treating physician; (3) Dr. Burns's report was inaccurate because Dr. Burns had only seen Mr. Stiefel one time; (4) due to Mr. Stiefel's biological son's durable power of attorney for financial management, Mr. Stiefel has no need of a conservator. Additionally, on the same day, the guardian ad litem also filed her report, stating that Mr. Stiefel was affectionate and loving when visiting his wife, "reveled in showcasing his custom built home . . . [and] functions well in the familiarity of his environs." The guardian ad litem specifically found that "[Mr. Stiefel] does need assistance maintaining his finances" and "also requires help with some aspects of daily living." Overall the guardian ad litem concluded that "[Mr.] Stiefel can function semi-independently. [H]owever, Mr. Stiefel needs some assistance with his affairs."

On November 17, 2016, the trial court held a hearing on the amended petition. At this hearing, the trial court first engaged in an extended discussion regarding Mrs. Stiefel and her assets before hearing Mr. Woodhouse's testimony. Mr. Woodhouse was the sole witness in this hearing. Mr. Woodhouse testified that he filed the petition for conservatorship because he noticed that funds were being taken from Mr. Stiefel's account and he became worried since those funds were intended to be used to pay for Mrs. Stiefel's care. He further testified that he was worried about Mr. Stiefel's mental state because Mr. Stiefel would often call him disoriented and sometimes crying, not able to find his way back home. Mr. Woodhouse, however, stated that these calls ceased approximately five to six months prior to the date of the hearing. Mr. Woodhouse further expressed that his only concern about Mr. Stiefel was in regard to the finances.

After his examination, the trial judge along with counsel, had an unrecorded conversation and then the court took a recess. Court subsequently resumed, and the attorneys approached the bench again. After another discussion, the trial judge stated that she understood that counsel had reached an agreement. After which, Mr. Stiefel's attorney stated, "[y]es, your honor. We're agreeable to allow Mr. Otto P. Stiefel [Mr. Stiefel's son] to serve as conservator of the person with the Aging Commission serving as conservator of the estate." No further testimony was heard nor was any additional evidence introduced.

On November 23, 2016, the trial court entered an order appointing Mr. Stiefel a permanent conservator of the person and estate, with Otto P. Stiefel acting as conservator of the person and the Aging Commission acting as conservator of the estate. Mr. Stiefel filed a timely appeal on December 21, 2016.

## ISSUES PRESENTED

Mr. Stiefel raises the following two issues for review, which are taken and slightly restated from his appellate brief:

1. Whether the trial court erred in finding that Mr. Woodhouse had established by clear and convincing evidence that a conservator over the person and the estate should be established for Mr. Stiefel, where there was no medical proof presented at the hearing and Mr. Woodhouse's testimony was insufficient.
2. Whether the trial court considered evidence not properly admitted at the hearing in making its determination that there was clear and convincing evidence that a conservator over the person and the estate should be established for Mr. Stiefel.

## STANDARD OF REVIEW

When analyzing issues such as the ones presented by Mr. Stiefel, we are aware that this Court "may need to apply more than one standard of review when reviewing a lower court's decision appointing a conservator." *In re Conservatorship of Davenport*, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *5 (Tenn. Ct. App. Dec. 27, 2005) (quoting *Crumley v. Perdue*, No. 01-A-01-9704-CH-00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov. 7, 1997)). Because a determination regarding a conservatorship "requires the lower court to make legal, factual, and discretionary determinations[, e]ach of these determinations require different standards of review." *Id.*

The Tennessee Rules of Appellate Procedure provide us with the proper standard when reviewing findings of fact by the trial court, explaining that "[u]nless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). However, a trial court's conclusions of law are examined "under a purely de novo standard of review, affording no presumption of correctness to those findings." *Davenport*, 2005 WL 3533299 at *6 (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)(citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

Discretionary decisions made by the trial court are reviewed under an abuse of discretion standard. The trial court's decision as to the ward's best interest and proper conservator are both considered discretionary determinations. *See Crumley*, 1997 WL 691532, at *2. Under this standard, "[a]n abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Lee Medical Inc. v.*

***Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)(citing ***State v. Lewis***, 235 S.W.3d 136, 141 (Tenn. 2007)). Therefore, a court abuses its discretion only "when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." ***Davenport***, 2005 WL 3533299, at \*6 (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)(internal citations omitted)). An abuse of discretion standard, however, "does not permit the appellate court to substitute its judgment for that of the trial court." ***Davenport***, 2005 WL 3533299, at \*6 (citing ***Eldridge***, 42 S.W.3d at 85)(internal citations omitted)).

## DISCUSSION

A conservator is a "person or persons appointed by the court to provide partial or full supervision, protection and assistance of the person or property or both of a disabled person." Tenn. Code Ann. § 34-1-101(4). The legislature has also defined a person with a disability as "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(13). The court generally appoints a conservator "to safeguard the rights of the incompetent by protecting his person and by managing and preserving his property." ***Davenport***, 2005 WL 3533299, at \*7 (citing 57 C.J.S. *Mental Health* § 110 (1992)). In other words, "[c]onservatorship proceedings provide a forum for determining whether a person's ability to remain autonomous has become impaired." ***In re Conservatorship of Groves***, 109 S.W.3d 317, 329 (Tenn. Ct. App. 2003). Thus, "[p]ersons who are the subject of a conservatorship face a substantial loss of freedom." *Id.* (citing ***Guardianship of Reyes***, 152 Ariz. 235, 731 P.2d 130, 131 (Ariz. 1986); ***Edward v. Lamkins***, 99 Cal. App. 4th 516, 122 Cal. Rptr.2d 1, 12 (Cal. Ct. App. 2002); ***In re Boyer***, 636 P.2d 1085, 1090 (Utah 1981)).

The Tennessee General Assembly has not yet defined the burden of proof in conservatorship cases by statute. ***Groves***, 109 S.W.3d at 329. "It is well-settled that the law presumes that adult persons are sane, rather than insane, and capable, rather than incapable, to direct their personal affairs until satisfactory evidence to the contrary is presented. Mental or physical impairment should never be presumed." *Id.* at 329–30 (footnotes omitted) (citing ***Langston v. Allen***, 268 Ga. 733, 493 S.E.2d 401, 403 (Ga. 1997)). It is a general rule that "the party with the affirmative of an issue has the burden of proof." *Id.* at 330 (citing ***Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.,*** 33 S.W.3d 779, 783 (Tenn. 2000); ***Freeman v. Felts***, 344 S.W.2d 550, 554 (Tenn. 1961)). "Thus, in involuntary conservatorship proceedings, the burden of proof is on the person or persons petitioning for the appointment of a conservator."

Moreover, "[b]efore the court may appoint a conservator over the person or property of an individual, the petitioner must prove the following by clear and convincing evidence: (1) that the individual for whom the conservatorship is sought 'is fully or

- 6 -

partially disabled,' and (2) that the individual for whom the conservatorship is sought 'is in need of assistance from the court.'" ***Davenport***, 2005 WL 3533299, at \*7 (quoting Tenn. Code Ann. § 24-1-126)). Once the trial court determines that the appointment of a conservator is necessary, the trial court must then determine "what is in the best interests of the disabled person, and . . . based on the first determination, who is the appropriate conservator." ***Crumley***, 1997 WL 691532, at \*3. Due to the serious nature of appointing a conservatorship, the standard of proof is heightened "eliminat[ing] all serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." ***Groves***, 109 S.W.3d at 330 (citing ***Walton v. Young***, 950 S.W.2d 956, 960 (Tenn. 1997); ***Ray v. Ray***, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001)). Accordingly, clear and convincing evidence "should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." ***Davenport***, 2005 WL 3533299, at \*7 (quoting ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995)).

## *A. Clear and Convincing Evidence*

Here, the trial court's order appointing a conservator for Mr. Stiefel specifically states that the trial court found clear and convincing evidence that he was in need of a conservator stating: "In accordance with Tenn. Code Ann. §34-1-126, this Court finds by clear and convincing evidence that [Mr. Stiefel] is disabled as defined by Tenn. Code Ann. § 34-1-101(7) and that [Mr. Stiefel] is in need of assistance from this Court."

The parties, however, dispute whether there was sufficient evidence presented at the November 17, 2016 hearing from which the trial court could make this finding. As such, we review the record to determine whether clear and convincing evidence that Appellant was in need of conservator was presented to the trial court. From our review of the evidence presented, we conclude that the proof was insufficient to meet the clear and convincing evidence standard.

As an initial matter, we must first comment on the lack of findings of fact and conclusions of law contained in the trial court's order. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in relevant part: "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." This Court has repeatedly held that the directives of Rule 52.01 are mandatory, rather than discretionary. *See, e.g.,* ***Burris v. Burris***, 512 S.W.3d 239, 254 (Tenn. Ct. App. 2016); ***F & M Mktg. Servs., Inc. v. Christenberry Trucking & Farm, Inc.***, No. E2015-00266-COA-R3-CV, 2015 WL 6122872, at \*4 (Tenn. Ct. App. Oct. 19, 2015). Such findings provide this Court with a clear basis for a trial court's decision for purposes of appellate review. ***Lovelace v. Copley***, 418 S.W.3d 1, 34 (Tenn.2013). The requirement to make findings of fact and conclusions of law is therefore "not a mere technicality." ***In re K.H.***, No. W2008-01144-

COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). As this Court recently explained:

> While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." [*Lovlace*, 418 S.W.3d at 35.] "Simply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)).

*Cain-Swope v. Swope*, 523 S.W.3d 79, 86 (Tenn. Ct. App. 2016), perm. app denied (Tenn. Apr. 12, 2017). Here, the trial court's order merely provides that after reviewing the report of the guardian ad litem, the report of Dr. Burns, Mr. Woodhouse's testimony, and the entire record, clear and convincing evidence was presented to support the imposition of a conservatorship. The trial court's order provides no factual basis for its determination that Mr. Stiefel suffered from a disabling condition or that the appointment of a conservator was necessary. Moreover, the trial court's order fails to make any findings on the best interest of Mr. Stiefel. Clearly, these scant findings do not comply with either the letter or the spirit of Rule 52.01. Accordingly, when a trial judge does not properly make findings of fact and conclusions of law under Rule 52.01, "the appellate court may soldier on when the case involves only a clear legal issue, or when the court's decision is readily ascertainable." *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. Ann. Feb. 22, 2013) (internal citations omitted)(citing *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012)). Thus, despite the final order's non-compliance with Rule 52.01, given the scarcity of evidence actually properly presented in this case, as discussed in detail *infra*, we will proceed to consider whether the trial court's express findings are supported by the evidence that was properly admitted in the record.

At the hearing for Mr. Woodhouse's petition on November 17, 2016, both parties were given the opportunity to present evidence to the trial court. The only evidence admitted, however, was Mr. Woodhouse's testimony. In his testimony, Mr. Woodhouse stated that he had become worried about Mr. Stiefel after receiving frantic calls from Mr. Stiefel during the day when he could not find his way home. Mr. Woodhouse also noticed a significant amount of money being withdrawn from Mr. Stiefel's account in California, leading him to file the conservatorship petition. He explained, "we knew that the account was joint at the time and we needed the money to pay for my grandmother's [Mrs. Stiefel's] care in the care center, so we were really worried about the funds being depleted."

In his testimony, Mr. Woodhouse clarified that Mr. Stiefel is in good physical condition, "[i]t's just the mental aspect" that Mr. Woodhouse is concerned about. Mr. Woodhouse made it clear that he was worried solely about Mr. Stiefel's financial decisions. The remainder of the testimony, and a significant portion of the hearing, discussed financial concerns regarding Mrs. Stiefel and her expenses. After Mr. Woodhouse's examination ended, counsel and the judge had an off-record discussion at the bench.

This testimony, standing alone, is simply insufficient to support a finding by clear and convincing evidence that Mr. Stiefel suffered from a full or partial disability that made him in need of a conservator. ***Davenport***, 2005 WL 3533299, at *7 (quoting Tenn. Code Ann. § 24-1-126). As an initial matter, we note that Mr. Stiefel did admit in his answer that he suffered from dementia. *See **Rast v. Terry***, 532 S.W.2d 552, 554 (Tenn. 1976) ("When the allegations of the complaint are admitted in the answer the subject matter thereof is removed as an issue, no proof is necessary and it becomes conclusive on the parties."). A determination that a party has a "disabling illness, injury, or condition," however, is insufficient to support the imposition of a conservatorship without evidence regarding "the effect that the illness, injury, or condition has had on the capacity of the person for whom a conservator is sought." ***Groves***, 109 S.W.3d at 331. Here, Mr. Woodhouse's concerns about Mr. Stiefel's memory some six months prior to the time of trial provide little support for the assertion that Appellant was in need of assistance at the time of trial. *See **id.*** at 334 ("[C]apacity is not necessarily static. It is fluid and can fluctuate from moment to moment."). Additionally, although Mr. Woodhouse testified that he had concerns regarding Mr. Stiefel's management of his finances, there was no testimony to show that Mr. Stiefel's financial decisions were the result of a lack of capacity due to dementia.

Mr. Woodhouse argues, however, that the combination of his testimony, the guardian ad litem's report, and Dr. Burns's report provide clear and convincing evidence sufficient to satisfy appellate review. Respectfully, we cannot agree. We begin with the medical report submitted by Dr. Burns.

Mr. Woodhouse argues that that Dr. Burns's report is prima facie evidence that Mr. Stiefel was disabled or had a disability, citing Tennessee Code Annotated section 34-3-105(d). As previously discussed, Dr. Burns examined Mr. Stiefel upon order of the trial court to submit to an examination. Under section 34-3-105(d), "[t]he examiner's sworn report shall be prima facie evidence of the respondent's disability and need for the appointment of a fiduciary unless the report is contested and found to be in error." Tenn. Code Ann. §34-3-105(d). Mr. Woodhouse contends that even though Mr. Stiefel "initially contested the report of Dr. Burns" through his amended answer to amended petition, "the court reasonably considered his report as uncontested at the time where [Mr. Stiefel], through his [counsel], announced [the purported] agreement." Considering the record as a whole, we cannot agree that this report was uncontested for purposes of

section 34-3-105(d). Although we concede that there was some discussion purporting to be an agreement regarding the ultimate appointment of conservator, discussed in detail *infra*, the record establishes that Mr. Stiefel contested Dr. Burns's findings on multiple occasions. First, Mr. Stiefel objected to Dr. Burns's report in his amended answer, asserting that Dr. Burns had not spent sufficient time examining him. Additionally, during the course of the proceedings in the trial court, Mr. Stiefel submitted the reports of two other physicians, both of whom opined that Mr. Stiefel was not in need of conservator. As such, we simply cannot conclude that Dr. Burns's report was "uncontested" for purposes of Tennessee Code Annotated section 34-3-105(d).

Furthermore, Mr. Stiefel argues that Dr. Burns's report was improperly considered by the trial judge. We agree. A similar situation was presented in *In re Conservatorship of Davenport*, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *5 (Tenn. Ct. App. Dec. 27, 2005). In *Davenport*, the trial court ordered the proposed ward to undergo a medical exam pursuant to Tennessee Code Annotated section 34-3-105(b). *Id.* at *2. The ordered examination occurred and the physician filed his report with the trial court. *Id.* At the hearing to determine whether the proposed ward was in need of a conservator, the petitioners attempted to introduce the medical report into evidence. *Id.* at *9. The trial court allowed the introduction of the report over the objection of the proposed ward. *Id.* This Court reversed, however, explaining that while the report may have been part of the record under the statute, it "do[es] not constitute evidence considered by the trier of fact when rendering a decision in the case." *Id.* at *11. Rather, this Court held that "the legislature did not intend for the report of physicians and psychologists . . . to be admitted into evidence in contravention or in lieu of the Tennessee Rules of Evidence." *Id.* at *12.

The same is true in this case. Both *Davenport* and this case deal with the trial court's consideration of a medical report as evidence in a conservatorship dispute. In *Davenport*, however, the petitioners at least attempted to admit the report into evidence. We cannot say the same regarding the Appellee, Mr. Woodhouse, in the case at bar. Thus, although Dr. Burns's report was contained in the record, the report simply did not constitute evidence at the hearing to ultimately determine Mr. Stiefel's need for a conservator. Therefore, the trial judge improperly considered Dr. Burns's Report.[6]

---

[6] In his appellate brief, Appellant asserts that the trial court improperly relied upon Appellant's testimony and demeanor when testifying in a prior, unrelated matter. Indeed, the record shows that the trial court commented on her recollections of Appellant's testimony in a prior matter. The trial court's order, however, does not in any way rely on the trial court's alleged recollection of Appellant from a prior proceeding. It is well-settled that courts speak through their orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1997). Additionally, Appellee does not rely on this as evidence in her brief to support the trial court's imposition of a conservatorship. Given that we have ruled in Appellant's favor with regard to the evidence presented to support the imposition of a conservatorship, we will not tax the length of this Opinion with further discussion of this issue.

Mr. Stiefel next asserts that the trial court erred in relying on the guardian ad litem report because it is "not evidence of whether [Mr. Stiefel] has a disability." As previously discussed, however, Mr. Stiefel admitted in his answer that he suffered from dementia. The Tennessee Supreme Court has previously recognized that dementia may serve as a disabling syndrome in some situations and that it is often irreversible. *See Groves*, 109 S.W.3d at 338 ("Persons with chronic dementing illnesses gradually lose the ability to perform the tasks normal daily living requires."). Even assuming that the trial court was entitled to consider the guardian ad litem's report where it was not properly presented as evidence at trial, the guardian ad litem's report, considered alone or in conjunction with Mr. Woodhouse's testimony, does not establish clear and convincing evidence that Mr. Stiefel is in need of a conservator because of his dementia. Here, the guardian ad litem report specifically states that Mr. Stiefel has the ability to perform his daily tasks, such as hygiene and cooking, and was lucid. As such, the guardian ad litem's report offers no justification for the trial court's decision to impose a conservatorship over Mr. Stiefel's person. The report, however, opines that Mr. Stiefel needs assistance with his finances, which Mr. Woodhouse asserts is clear and convincing evidence in support of the trial court's decision to appoint a conservatorship over Mr. Stiefel's estate. The report simply does not state that Mr. Stiefel is in need of conservatorship in order to maintain his finances, only that he needs assistance in this regard, which Son has been providing. Indeed, nothing in the report indicates that Mr. Stiefel "lacks the ability to absorb information, to understand its implications, to correctly perceive the environment, [] to understand the relationship between his [] desires and actions," or to control his behavior. *Groves*, 109 S.W.3d at 329. Simply needing assistance, without more, is insufficient to meet the high burden necessary to remove all serious or substantial doubt in order to justify removing Mr. Stiefel's "independence and [] ability to control [his] own li[f]e[.]" *Id.* at 328.

Thus, we respectfully cannot conclude that the testimony from Mr. Woodhouse and the guardian ad litem's report reach the threshold of clear and convincing evidence needed to appoint a conservator for Mr. Stiefel. Mr. Woodhouse argues, however, that the decision to appoint a conservator was not based upon the evidence presented at trial but rather by agreement of the parties. Mr. Stiefel denies that the parties reached an enforceable agreement on this issue. We therefore proceed to address this issue.

### B. *Purported Agreement*

Tennessee Code Annotated section 34-3-121(b) states, in relevant part,

In any action, claim, or suit in which a minor or person with a disability is a party or in any case of personal injury to a minor or person with a disability caused by the alleged wrongful act of another, the court in which the action, claim, or suit is pending, or the court supervising the fiduciary relationship if a fiduciary has been appointed, has the power to approve and confirm a

- 11 -

compromise of the matters in controversy on behalf of the minor or person with a disability. If the court deems the compromise to be in the best interest of the minor or person with a disability, any order or decree approving and confirming the compromise shall be binding on the minor or person with a disability.

Tenn. Code Ann. § 34-3-121(b).  In short, the statute gives the court the ability to enter an order based on the agreement of both parties in a conservatorship dispute if the court determines the compromise to be in the disabled or minor person's best interest.  Tenn. Code Ann. § 34-3-121(b).

During the November 17, 2016 hearing, the following exchange occurred after the parties returned from an off-the-record meeting:

> THE COURT: I understand you all have reached an agreement
> [MR. STIEFEL'S COUNSEL]: Yes, your Honor.  We're agreeable to allow Mr. Otto P. Stiefel to serve as conservator of the person with the Aging Commission serving as conservator of the estate.

Additionally, after making this agreement, counsel for Mr. Woodhouse, Mr. Stiefel, and the Aging Commission began discussing terms of the agreement, such as "allowance for miscellaneous expenses" for Mr. Stiefel and whether the Aging Commission should "handle the money for Mrs. Stiefel also."   Thus, it appears as though that at the November 17, 2016 hearing all parties reached a potential agreement to allow Mr. Stiefel's son to be the conservator of the person and the Aging Commission as being conservator of Mr. Stiefel's estate.  Based upon this purported agreement, the parties put on no further proof.

"It is well settled that a trial court speaks through its orders."  ***Todd v. Justice***, No. E2009-02346-COA-R3-CV, 2010 WL 2350568, at *7 (Tenn. Ct. App. June 14, 2010) (quoting ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1997)).  Despite the statements in the transcript indicating that an agreement had been reached, the trial court's final order makes no mention of an agreement between the parties, section 34-3-121(b), or whether approving such an agreement is in the best interest of Mr. Stiefel. Rather, the trial court merely recites that it found clear and convincing evidence to support the appointment of a conservator.   As previously discussed, after reviewing the record, we conclude that clear and convincing evidence was not in fact presented to support the imposition of a conservatorship over Mr. Stiefel's person or estate.

However, we are unable to ascertain whether an agreement was in fact reached between the parties to allow a conservator to be appointed, given the statements of counsel contained in the transcript of the final hearing. Indeed, it appears that the lack of additional evidence presented in this case results from the fact that the parties agreed to

the appointment of a conservator. Clearly, had such an agreement been reached, the agreement would be enforceable under section 34-3-121(b) where the trial court determines that the agreement is in the ward's best interest. As such, we think it appropriate to remand to the trial court solely for the determination of whether an agreement was made pursuant to section 34-3-121(b), and if so, whether such an agreement is in Mr. Stiefel's best interest. The trial court may consider current circumstances and additional evidence, if relevant, solely for Mr. Stiefel's best interest determination.

### Conclusion

The judgment of the Shelby County Probate Court is reversed in part, vacated in part, and remanded for further proceedings. Costs of this appeal are taxed one-half to Mr. Stiefel, and his surety, and one-half to Mr. Woodhouse, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE